702 So.2d 639 (1997)
Elizabeth McHUGH, Appellant/Cross-Appellee,
v.
Kevin P. McHUGH, Appellee/Cross-Appellant.
Nos. 95-2867, 95-3067, 95-3659 and 96-1928.
District Court of Appeal of Florida, Fourth District.
December 31, 1997.
*640 Mark D. Ewart, West Palm Beach, for appellant/cross-appellee.
Lewis Kapner of Lewis Kapner, P.A., West Palm Beach, for appellee/cross-appellant.
WARNER, Judge.
The parties both appeal portions of a final judgment of dissolution of marriage. They raise multiple claims of error associated with the identification, valuation and distribution of marital assets; the award of both permanent and rehabilitative alimony; and the required payment of other assorted expenses for the children of the marriage. We affirm in part and reverse in part.
The parties were married in 1983 and had two minor children at the time of the divorce. *641 The husband worked throughout the marriage in the auto sales industry. The wife also worked in the auto sales industry but has not worked in the past several years due to bouts of depression. While the wife's mental health was a concern, the husband had problems with his physical health due to a heart condition.
The husband lost his job with a Florida car dealership in 1991. He then took a job as chief executive officer of Hall Auto World of Virginia ("Hall Auto World") in July of 1991. The wife was originally planning to move to Virginia and join the husband. However, after continuing marital problems, she instead filed an action for dissolution in Florida.
One significant area of disagreement between the parties was the husband's income and the treatment of the husband's stock in Hall Auto World as a marital asset. At some point after his employment began, he signed a stock purchase agreement with Hall Auto World to acquire part of its stock. Although the husband entered the agreement after the wife filed the dissolution action, the trial court found that the stock purchase agreement was an important part of the compensation package which induced the husband to take the position in the first place. The agreement gave the husband the opportunity to buy a percentage of stock of certain related Hall Auto World companies for $450,000, for which the husband signed a promissory note. While the note did not have a due date, $150,000 was forgiven in 1993, and $150,000 was forgiven in 1994. The husband reported these amounts as income on his 1993 and 1994 tax returns. The trial court did not include these amounts as part of the husband's recurring income for child support purposes. But the trial court did determine that the stock was a marital asset, as it was the husband's experience, gained from the Florida job, which made him an eligible candidate for the position at Hall Auto World.
The court equitably divided all of the assets, including the Hall Auto World stock and the value of the retirement plan from the husband's prior employment. It awarded the wife $2,500 per month in rehabilitative alimony, $1,500 per month in permanent alimony, and child support based on a net monthly income to the husband of $17,340. The trial court also required the husband to maintain life insurance policies to insure the payment of child support; ordered the husband to maintain health insurance for the children and directed that any reasonable medical or dental expenses not covered by insurance would be paid 97% by the husband, 3% by the wife; and provided for the continuation of Florida Pre-paid college accounts for the children.
In her appeal, the wife first challenges the trial court's calculation of the husband's income for child support purposes, noting three categories of income which she contends the trial court erroneously excluded. First, the trial court excluded $247,000 in Schedule K-1 income of Hall Auto World attributable to the husband's stock ownership. Hall Auto World was a Subchapter S corporation and as such the income of the corporation is passed through to its shareholders, as if they had received it individually, even when the corporation retains it. Second, it excluded $124,000 which Hall Auto World paid to the IRS for the tax liability on the Schedule K-1 income. Finally, the court excluded the $150,000 in loan forgiveness on the stock purchase agreement for the Hall Auto World stock.
The trial court did not include the Schedule K-1 income because the husband did not receive it. Hall Auto World retained the income for purposes of building the business and keeping it going. If the husband had received the income, it would have been income as contemplated by section 61.30(2), Florida Statutes (1993), which provides, in part, that:
(a) Gross income shall include, but is not limited to, the following items:
....
3. Business income from sources such as self-employment, partnership, close corporations, and independent contracts. "Business income" means gross receipts minus ordinary and necessary expenses required to produce income.
The trial court believed the husband's uncontradicted testimony that the K-1 income *642 was not available to him. The wife offered no proof that the husband, being only a 10% shareholder of the company, had any access to, or control over, these funds. The trial court did not, accordingly, err in excluding it as income.[1] For the same reason, we reject the wife's contention that Hall Auto World's payment of the husband's tax liability on the Schedule K-1 income should have been included in the husband's income for child support purposes.
On the husband's 1993 and 1994 tax returns, he reported as income $150,000 of forgiven debt on the stock purchase agreement. The trial court refused to include this amount in income because it was nonrecurring. In addition, as the wife's expert noted, the husband was receiving an asset of value for the forgiven debt. The trial court determined the stock was a marital asset for purposes of equitable distribution. As a result, it was appropriate not to consider the payment for the stock as both income and an asset for equitable distribution. See Waldman v. Waldman, 520 So.2d 87 (Fla. 3d DCA 1988)(injustice would result if same asset were considered in both property distribution and child support obligations). The wife has shown no abuse of discretion.
We also agree with the trial court's determination that the husband's stock in Hall Auto World was a marital asset. The wife presented evidence that the stock agreement was part of the compensation package, which formed the incentive for the husband to take the position during the marriage. Moreover, prior to the final hearing, the husband had paid for $300,000 of the stock through forgiveness of the promissory note which he had executed in connection with its acquisition. Noting that it had not included this forgiveness of debt as part of the husband's income in determining the child support, the trial court concluded that it was "just and equitable" that the Hall Auto World stock should be deemed a marital asset for the purpose of making equitable distribution. The court then allocated the value of the stock to the husband in the amount of $350,000, "presuming that the purchase price remains the value of the stock and that one-third of the final $150,000 payment was forgiven as of the April 18, 1995, date of Final Judgment."
In determining that the stock was a marital asset, the trial court applied the 1993 version of section 61.075(6), which provides that:
The date for determining marital assets and liabilities and the value of such assets and the amount of such liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage, unless the trial judge determines another date is just and equitable under the circumstances.

(emphasis added). Although the 1994 amendment to this statute changed the cutoff date for determining the nature of assets and liabilities as marital or non-marital, the 1993 version applied to this dissolution. See Nicewonder v. Nicewonder, 602 So.2d 1354, 1357 (Fla. 1st DCA 1992)(divorce case governed by law existing at time of filing the petition). Thus, the trial court had the discretion to characterize the Hall Auto World stock as a marital asset if "just and equitable under the circumstances," even though the husband entered the stock purchase agreement subsequent to the filing of the dissolution action. We do not find it to be an abuse of discretion to consider it a marital asset, because it was part of the compensation agreement which enticed the husband to Virginia in 1991.
The trial court did err, however, by including in the valuation of the stock the $50,000 that it presumed Hall Auto World had forgiven during the first third of 1995, as the pro rata share of the 1995 $150,000 debt forgiveness. No portion of the stock was transferred to the husband during that time, and pursuant to the stock purchase agreement, if the husband ceased employment prior *643 to the end of the year, he would not have received any additional stock. Nor, under the contract, was Hall Auto World obligated to forgive the $150,000 debt at the end of 1995. Thus, the trial court's pro rata valuation was error. We therefore reverse and remand with directions to fix the value of the Hall Auto World stock at $300,000. On remand, the court may reconsider the equitable distribution in light of the reduction of the value of this asset.
As part of the equitable distribution, the wife was awarded the husband's retirement plan with his Florida employer, valued at $328,000 in the final judgment. The final judgment awarded the wife the asset, not simply its value, and the parties were directed to execute whatever documents were necessary to effectuate the transfer of the assets awarded to each other.
During the pendency of this appeal, the retirement account appreciated in value, and the parties disputed who was entitled to the increase. This court granted a motion to relinquish the case to the trial court to determine the issue. The trial court determined that the wife was entitled to receive only the value of the pension as stated in the final judgment, thereby awarding any increase to the husband. We disagree. The wife was awarded the asset in the final judgment. At that time, it became her asset, although the documents transferring title had not yet been executed. As the wife notes, had she received the account on the day of the final judgment, she would have been at the mercy of the stock market and could have either benefitted from an increase in value or suffered from a loss in value. The wife is entitled to the increase in value of this asset from the date of the final judgment. It is no different than if she had been awarded any asset which increased in value. And had the plan suffered a loss, we do not think that the husband would offer to make up the difference between its loss in value and the amount of its value from the date of the final judgment.
Raticoff v. Raticoff, 507 So.2d 798 (Fla. 4th DCA 1987), is distinguishable. In that case, the parties agreed to a distribution of benefits from the husband's pension plan, only to discover after making the agreement that there were additional benefits which could be obtained. Thus, they were unaware of existing benefits. In the instant case, the parties knew that the pension plan was a stock account which could go up or down. The husband even testified to the fluctuating value of the plan, and it was he who suggested that the wife be awarded the plan. The increase in the value of the plan was within the contemplation of the parties at the time of the dissolution, and it was not due to any effort of the husband but solely as a result of stock market fluctuations. The increase in value belongs to the wife.
On cross-appeal the husband contests both of the alimony awards, complaining that the amount was excessive, that permanent alimony was improper in a "short" term marriage, and that rehabilitative alimony was improper to "bridge the gap." We find no abuse of discretion as to the amount of alimony, as the wife testified that it took $7,000 per month to support her, which is the amount that the husband sent to his family in Florida when he was living in Virginia. We do not consider this marriage a short-term marriage but instead one in the "gray" area. However, considering the wife's depression, her care of the children, and the fact that even with her highest earnings, she would be unable to support herself in the standard of living she enjoyed while married, we find no abuse of discretion in awarding some permanent alimony. See Kelly v. Kelly, 557 So.2d 625 (Fla. 4th DCA 1990).
Finally, although in this district we approve a short time of "bridge the gap" rehabilitative alimony, see Murray v. Murray, 374 So.2d 622, 624 (Fla. 4th DCA 1979), five years is in excess of the time period generally approved for such an award. See, e.g., Green v. Green, 672 So.2d 49 (Fla. 4th DCA 1996). Nevertheless, this record supports a five year rehabilitative award for the purpose of allowing the wife to rebuild her career in auto sales. See Kanouse v. Kanouse, 549 So.2d 1035 (Fla. 4th DCA 1989). The wife's vocational expert testified that it would take the wife five years to earn up to $35,000-$50,000 per year, and the trial court *644 determined that she should go back to work. Thus, we find no abuse of discretion in the award of rehabilitative alimony.
We have considered the remaining points on appeal raised by both parties and find no reversible error in any of them.
Affirmed in part; reversed in part; and remanded.
DELL and KLEIN, JJ., concur.
NOTE: DELL, J., did not participate in oral argument, but has had the opportunity to review the entire proceedings.
NOTES
[1] If there had been evidence that the corporation was withholding the distribution of profits to reduce the husband's income for purposes of this proceeding, the court could have considered that as income under the statute.