911 So.2d 1222 (2005)
Sherry Palicte ZOLD, Petitioner,
v.
John F. ZOLD, Respondent.
No. SC04-1858.
Supreme Court of Florida.
September 15, 2005.
*1224 Norman D. Levin and Amy Hamlin of Norman D. Levin, P.A., Longwood, FL, for petitioner.
Charles W. Willits, Orlando, FL, for respondent.
PARIENTE, C.J.
We have for review Zold v. Zold, 880 So.2d 779 (Fla. 5th DCA 2004), which expressly and directly conflicts with Martinez v. Martinez, 761 So.2d 433 (Fla. 3d DCA 2000), Sohacki v. Sohacki, 657 So.2d 41 (Fla. 1st DCA 1995), and Zipperer v. Zipperer, 567 So.2d 916 (Fla. 1st DCA 1990). We have jurisdiction.[1] The conflict issue is whether "pass-through" income[2] from an S corporation that is not actually distributed to the shareholder-spouse is to be considered income for the purposes of *1225 calculating alimony, child support, and attorney's fees.

FACTS AND PROCEDURAL HISTORY
The issue in this case arises from a final judgment of dissolution between John F. Zold (the husband) and Sherry Palicte Zold (the wife). The husband, who was sixty-five years old at the time of the trial, is the chief executive officer of Tri Tech Electronics, Inc., (Tri Tech), a close corporation[3] that elected to be taxed pursuant to Subchapter S of the Internal Revenue Code. The wife, who was fifty years old at the time of the trial, was a full-time housewife with one year of college education. The couple's minor child was fifteen years old at the time of the trial. The husband's only marital asset and sole source of income is his interest in Tri Tech. The husband and another shareholder, A.J. Stanton, own all of Tri Tech's capital stock.
The trial court found that the husband owned 57.15428 percent of Tri Tech stock (400 shares), and that his ownership interest was worth $890,000 based on an appraisal report that used the asset-based approach to determine the fair market value of 400 shares of Tri Tech stock. The trial court also found that the husband had income exceeding $245,000 per year as reflected on his individual federal income tax return for 2001. The trial court based its determination of child support and alimony on the fair market value of the husband's interest in Tri Tech stock and the husband's income reported on his individual federal income tax return for 2001. In entering final judgment, the trial court ordered the husband to pay a lump sum amount, permanent periodic alimony, child support, premiums on a life insurance policy, and one-half of the child's expenses. The husband was also required to pay for health and dental insurance for the couple's minor child. Thereafter, the trial court supplemented its previous order and required the husband to contribute to the wife's attorney's fees and costs. The entire amount of the husband's immediate obligations was in excess of $179,406.20.[4]
On appeal to the Fifth District Court of Appeal, the husband argued that the trial court erred in valuing his ownership interest in Tri Tech at $890,000 because he owns only 40 percent of Tri Tech stock, not 57.15428 percent as found by the trial court. The Fifth District concluded that there was competent, substantial evidence to support the trial court's finding concerning the husband's ownership interest.[5]
However, the Fifth District concluded that the trial court erred in considering *1226 the husband's entire pro rata share of net income from Tri Tech, both distributed and undistributed, as income available to the husband to satisfy the financial obligations imposed in the final judgment and award of attorney's fees. The Fifth District noted that all of the corporation's net income passes through to the shareholders for income tax purposes under Subchapter S and is therefore taxable to each shareholder in accordance with his or her percentage of stock ownership. The Fifth District reasoned, however, that shareholders do not necessarily receive cash distributions equal to the shareholder's proportionate share of the corporation's net income that is taxed to them because a portion of the corporation's net income may be retained for corporate purposes. The Fifth District stated that "[o]nly that amount of cash is distributed in excess of what must be retained for corporate purposes." Zold, 880 So.2d at 780. The district court explained that the "corporation is not the personal piggy bank for any one shareholder simply because that shareholder may have a controlling interest in the corporation and is also the chief executive officer. Financial responsibilities to creditors and employees must be satisfied before distributions to shareholders take place if a corporation is to remain viable." Id. at 781.
The Fifth District observed that in this case there was no evidence that the husband had the authority to accumulate the income rather than distribute it. The district court noted that the corporate accountant testified that "distribution of cash to shareholders equal to the total corporate earnings should not be made because cash is required to be retained as working capital to maintain business operations of the corporation and to avoid bankruptcy." Id. The Fifth District stated that the final judgment demonstrates that the trial court believed that Tri Tech's balance sheet reflected income that was available for distribution. Specifically, the final judgment stated that Tri Tech's "available income on its balance sheet increased from $92,853 at year-end 1999 to $196,881 at year-end 2000 to $372,908 at year-end 2001." Id. (emphasis omitted). The Fifth District explained that a balance sheet shows a corporation's assets, liabilities, and owners' equity, but does not represent income that is available for distribution to the corporation's shareholders. Thus, the Fifth District concluded that the "record does not support the trial court's determination that [the amounts on Tri Tech's balance sheet] could be distributed by the corporation to the shareholders without jeopardizing corporate operations." Id.
The Fifth District vacated the portion of the final judgment in which the trial court made findings as to the husband's income and ordered support and equitable distribution based on those findings. The Fifth District also vacated the awards of attorney's fees and costs, and remanded with instructions that the trial court should not consider the undistributed "pass-through" income "unless it can be demonstrated that Tri Tech has delayed distributions of cash for purposes other than corporate requirements." Id. at 782.

ANALYSIS
The issue before the Court is whether "pass-through" income of an S corporation that is not distributed to shareholders constitutes income within the meaning of chapter 61, Florida Statutes (2004), for purposes of calculating alimony, child support, and attorney's fees. Further, we must decide whether the resolution of this issue requires an exclusively legal determination that can be governed by a bright line rule, or whether it also requires factual findings to be made on a case-by-case basis. To place this issue in context, we *1227 begin by reviewing the applicable federal and state statutes governing taxation of shareholders of an S corporation. Next, we review the provisions of chapter 61 defining income attributable to a spouse for purposes of determining alimony, child support, and attorney's fees. We then review cases addressing the issue of whether business income that has been reported on a spouse's individual federal income tax return but not received by the spouse constitutes income under chapter 61. Further, we analyze whether and under what circumstances undistributed "pass-through" income that has been retained by a corporation for corporate purposes constitutes income within the meaning of chapter 61. Finally, we review the Fifth District's decision in the present case.

I. Subchapter S Revision Act of 1982 and Section 607.06401, Florida Statutes (2004)
The Subchapter S Revision Act of 1982 (the "Act") allows a small business corporation to elect to have all of the corporation's income, deductions, losses, and credits pass through to the shareholders of the corporation for income tax purposes in accordance with each shareholder's pro rata share of ownership in the corporation. See 26 U.S.C.A. § 1366 (West Supp.2005).[6] This "pass-through" income is then taxed to the shareholders directly on the shareholders' individual federal income tax returns. See 26 U.S.C.A. § 1363 (West Supp.2005). Corporations are generally treated as separate legal entities from their shareholders for tax purposes. See S.Rep. No. 97-640, at 5, reprinted in 1982 U.S.C.C.A.N. 3253, 3257. Without an election to be treated as an S corporation, income earned by the corporation is taxed to the corporation and distributions from the corporation are taxed separately to the shareholders. See id. The Subchapter S Revision Act of 1982 was enacted to prevent double income taxation at the corporate and shareholder levels for small business corporations. See id.
Although an S corporation's net income is taxed directly to the shareholders under the Act, the shareholders do not necessarily receive distributions in an amount equivalent to what is taxed pursuant to the Subchapter S election. In Florida, an S corporation's authority to make distributions to shareholders is limited by the corporation's articles of incorporation and section 607.06401, Florida Statutes (2004). Section 607.06401 prohibits a corporation from making distributions in certain circumstances and provides in pertinent part that
(3) No distribution may be made if, after giving it effect:
(a) The corporation would not be able to pay its debts as they become due in the usual course of business; or

*1228 (b) The corporation's total assets would be less than the sum of its total liabilities plus (unless the articles of incorporation permit otherwise) the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.
§ 607.06401(3), Fla. Stat. (2004). Thus, section 607.06401(3) prohibits distributions that would render the corporation unable to fulfill its corporate duties to its debtors and shareholders. In those circumstances, a corporation must retain its income and cannot make a distribution to shareholders without violating Florida law.

II. Chapter 61, Florida Statutes (2004)
We next review the pertinent statutory provisions of chapter 61 to determine how the concept of "pass-through" income applicable to shareholders of an S corporation applies to the statutory definitions of income for calculating alimony, child support, and attorney's fees. Chapter 61 governs dissolution of marriage, support, and child custody proceedings. In evaluating the amount of alimony, where applicable, the trial court is instructed to consider and make findings regarding, inter alia, "[a]ll sources of income available to either party." § 61.08(2)(g), Fla. Stat. (2004).[7] In addition, the trial court must consider the "financial resources of each party," § 61.08(2)(d), Fla. Stat. (2004), and may consider "any other factor necessary to do equity and justice between the parties." § 61.08(2), Fla. Stat. (2004). Similarly, the child support guidelines establish that the presumptive amount of support is based on the parties' "combined monthly available income." § 61.30(6), Fla. Stat. (2004).[8] Lastly, in determining whether to award attorney's fees, the trial court must consider the "financial resources of both parties." § 61.16(1), Fla. Stat. (2004).[9]
Chapter 61 contains two separate definitions of income relevant to this case. First, section 61.046(7), Florida Statutes (2004), sets forth a general definition of the term "income" and provides that income as used within chapter 61 means
any form of payment to an individual, regardless of source, including but not limited to: wages, salary, commissions and bonuses, compensation as an independent contractor, worker's compensation, disability benefits, annuity and retirement benefits, pensions, dividends, interest, royalties, trusts, and any other payments, made by any person, private entity, federal or state government, or any unit of local government. United States Department of Veteran Affairs disability benefits and unemployment compensation, as defined in chapter 443, are excluded from this definition of income except for purposes of establishing an amount of support.
*1229 (Emphasis supplied.) This definition applies to the determination of income attributable to a spouse for purposes of determining awards of alimony and attorney's fees. Second, section 61.30, Florida Statutes (2004), defines "gross income" for child support purposes in part as including:
Business income from sources such as self-employment, partnership, close corporations, and independent contracts. "Business income" means gross receipts minus ordinary and necessary expenses required to produce income.

§ 61.30(2)(a)(3), Fla. Stat. (2004) (emphasis supplied). Although sections 61.046(7) and 61.30(2)(a)(3) utilize different language to define income, both statutory provisions focus on income that is available to a spouse.[10]
The plain language of section 61.046(7) defines income in terms of payment to an individual. It is a rule of statutory construction that where the Legislature has chosen not to define a term, "the plain and ordinary meaning of [the] word[ ] can be ascertained by reference to a dictionary." Nehme v. Smithkline Beecham Clinical Labs., Inc., 863 So.2d 201, 205 (Fla.2003) (quoting Seagrave v. State, 802 So.2d 281, 286 (Fla.2001)). The term "payment" has been defined to mean "the act of paying" or "something that is paid." Merriam Webster's Collegiate Dictionary 852 (10th ed.1999); see also Black's Law Dictionary 1165 (8th ed.2004) (defining "payment" to mean the "[p]erformance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation"). Thus, the term "payment" connotes something that is given to or received by an individual and, hence, is available to the individual to satisfy financial obligations imposed by the trial court during dissolution proceedings.
Similarly, in defining business income attributable to a spouse when computing child support, section 61.30(2)(a)(3) expressly excludes any portion of business income that is needed to satisfy the business's "ordinary and necessary expenses required to produce income." These funds are excluded because they are expected to be used by the business to cover its expenses and therefore are not available to the shareholder-spouse to satisfy court-ordered financial obligations upon dissolution of marriage.
The doctrine of in pari materia requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent. See Young v. Progressive Southeastern Ins. Co., 753 So.2d 80, 84 (Fla.2000) ("Where possible, courts must give effect to all statutory provisions and construe related statutory provisions in harmony with one another.") (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992)); McGhee v. Volusia County, 679 So.2d 729, 730 n. 1 (Fla.1996) (stating that the doctrine of in pari materia requires courts to construe related statutes together so that they are harmonized). *1230 We conclude that construed together, sections 61.046(7), 61.30(2)(a)(3), 61.08(2)(g), 61.30(6), and 61.16(1), reflect legislative intent that trial courts consider only that portion of a spouse's income that is available to the spouse. In fact, both section 61.08(2)(g), which concerns alimony, and section 61.30(6), which concerns child support, expressly refer to income that is available to a spouse. See § 61.08(2)(g) (stating that the trial court is to consider "all sources of income available to either party") (emphasis supplied); § 61.30(6) (stating that the trial court is to consider the parties' "combined monthly available income") (emphasis supplied).[11]

III. Case Law Addressing Undistributed Business Income for Chapter 61 Purposes
In Zipperer, the First District Court of Appeal held that a spouse's undistributed business income fell within the general definition of income set forth in section 61.046 and thus was properly considered by the trial court in awarding alimony. See 567 So.2d at 917. The First District rejected the argument that undistributed business income should not be considered income under chapter 61 because it was reported only for tax purposes and was not actually received by the payor spouse. See id. The First District noted that income is broadly defined in section 61.046 to include "any form of payment to an individual, regardless of source." Id. (quoting § 61.046(4), Fla. Stat.). Deeming the source of funds irrelevant under this section, the First District concluded that undistributed business income constitutes income for alimony purposes. In effect, the First District adopted a bright line rule that automatically treats undistributed business income as income attributable to a spouse under chapter 61.
In Sohacki, the First District cited to Zipperer as a basis for reversing a trial court's order that denied a request for attorney's fees and child support modification on the basis that undistributed "pass-through" income from an S corporation could not be considered income under chapter 61. See 657 So.2d at 42. The First District remanded for reconsideration of these issues because "the trial court apparently felt bound to accept" the shareholder-spouse's undisputed testimony that he did not actually receive the full amount of "pass-through" income generated from his S corporation despite the fact that he claimed this amount on his individual federal income tax return. Id. The First District observed that Zipperer allows a trial court to consider undistributed business income as income within the meaning of chapter 61 despite a payor spouse's claim that the income was reported solely for tax purposes and was not actually received by the spouse. See id.
The Third District has also considered whether undistributed "pass-through" income constitutes income for alimony and child support purposes. See Martinez, 761 So.2d at 434. Citing to Zipperer and Sohacki but without otherwise elaborating on its reasoning, the Third District held that the trial court did not err in attributing undistributed "pass-through" income to the shareholder-spouse as income. See id. at 435.[12]
*1231 In McHugh v. McHugh, 702 So.2d 639, 642 (Fla. 4th DCA 1997), the Fourth District Court of Appeal concluded that undistributed "pass-through" income from an S corporation does not constitute income under chapter 61 where the shareholder-spouse was a minority shareholder and the income was retained for corporate purposes. The uncontradicted testimony was that the corporation "retained the income for purposes of building the business and keeping it going." Id. at 641. However, the Fourth District pointed out that if undistributed "pass-through" income has been retained for noncorporate purposes, such as to reduce a shareholder-spouse's amount of income during dissolution, the trial court could consider it as income under chapter 61. See id. at 642 n. 1.
Similarly, the Fifth District in the present case concluded that the determination whether undistributed "pass-through" income constitutes income under chapter 61 depends on the purpose for which the income has been retained. The Fifth District explained that an inflexible rule treating undistributed "pass-through" income of a shareholder-spouse as available income in marital dissolution proceedings is contrary to corporate governance:
When a corporation has more than one shareholder, an officer/shareholder has a fiduciary duty to all shareholders. The corporation is not the personal piggy bank for any one shareholder simply because that shareholder may have a controlling interest in the corporation and is also the chief executive officer. Financial responsibilities to creditors and employees must be satisfied before distributions to shareholders take place if a corporation is to remain viable. Once the distributions are found to be possible, the distributions must be pro-rata in accordance with the percentage ownership of the capital stock of the corporation. Court ordered obligations in marital litigation should not place an ex-marital partner in the position of having to breach a corporate fiduciary obligation in order to avoid the possibility of a court finding that partner contemptuous.
Zold, 880 So.2d at 781. However, the Fifth District added that if undistributed "pass-through" income has been retained for noncorporate purposes, the income should be considered available income under chapter 61. See id. at 782.

IV. Whether Undistributed "Pass-Through" Income That Has Been Retained for Corporate Purposes Constitutes Income under Chapter 61
We conclude that undistributed "pass-through" income that has been retained by a corporation for corporate purposes does not constitute income within the meaning of chapter 61. Specifically, undistributed "pass-through" income that has been retained for corporate purposes is not available "income" under section 61.046(7) or "business income" under section 61.30(2)(a)(3). This is because the undistributed "pass-through" income will be used by the corporation to maintain corporate operations and therefore cannot be used by a shareholder-spouse to satisfy financial obligations imposed upon dissolution of marriage. In contrast, where undistributed "pass-through" income has been retained for noncorporate purposes, such as to shield this income from the reach of the other spouse during dissolution, the improper motive for its retention *1232 makes it available "income" under section 61.046(7) or "business income" under section 61.30(2)(a)(3).
This conclusion is consistent with our observation in Rosen v. Rosen, 696 So.2d 697, 700 (Fla.1997), that "proceedings under chapter 61 are in equity and governed by basic rules of fairness." See also § 61.011, Fla. Stat. (2004) ("Proceedings under this chapter are in chancery."). In fact, section 61.08(2) expressly allows a trial court to "consider any factor necessary to do equity and justice between the parties" when determining whether alimony is appropriate. Allowing a shareholder-spouse to reduce the amount of available income by manipulating the retention of "pass-through" income for his or her personal benefit is inconsistent with the stated legislative intent that dissolution proceedings under chapter 61 are equitable.
The basic approach adopted by the Fifth District is consistent with the statutes applicable to S corporations and various sections of chapter 61, including the statutory definitions of income which focus on income that is available to a spouse. The income reported on an individual federal income tax return for a shareholder-spouse of an S corporation is not necessarily equivalent to the income available to the shareholder-spouse.
As discussed above, in accordance with section 607.06401(3), an S corporation is prohibited from making distributions of income under certain circumstances, despite the fact that "pass-through" income has been taxed to shareholders on their individual federal income tax returns. Even if an S corporation is not expressly prohibited by section 607.06401(3) from distributing some or all of its "pass-through" income, the corporation may nonetheless determine that a distribution cannot be made and that the income should be retained for corporate purposes. See Zold, 880 So.2d at 781 ("Financial responsibilities to creditors and employees must be satisfied before distributions to shareholders take place if a corporation is to remain viable."); Anson v. Anson, 772 So.2d 52, 56 (Fla. 5th DCA 2000) (Peterson J., concurring specially) ("In order to conduct a business, a corporation must always maintain working capital, purchase fixed assets, maintain accounts receivable, and maintain inventory among other things, all of which, reduces cash available for dividends.").
We decline to establish a bright line rule in these circumstances. On the one hand, establishing a rule that undistributed "pass-through" income can never constitute income for purposes of computing alimony, child support, or attorney's fees, could encourage a shareholder-spouse to manipulate an S corporation's "pass-through" income in order to shield this income from the reach of the other spouse during dissolution proceedings. The potential for manipulation is greater if the spouse is a sole or majority shareholder of the corporation who, by virtue of his or her ownership, has more control than does a minority shareholder over whether income is retained or distributed by the corporation. See McHugh, 702 So.2d at 642 (observing that absent proof to the contrary, a minority shareholder does not have any access to or control over retained "pass-through" income); In re Marriage of Brand, 273 Kan. 346, 44 P.3d 321, 327 (2002) (stating that a minority shareholder has less ability to control the amount of corporate income retained). Clearly, income retained for purposes of avoiding financial obligations related to dissolution proceedings would not be income retained for corporate purposes.
*1233 On the other hand, establishing a rule that undistributed "pass-through" income always constitutes income within the meaning of chapter 61 ignores the fact that an S corporation may have been prohibited by Florida law from making distributions or that the corporation may have had legitimate business reasons for retaining its income. See Brett R. Turner, Classifying the Retained Earnings of a Separate Property Business as Marital Property, 15 Divorce Litig. 141, 148 (2003) ("[T]he owner of a business should not be required to place protection of the marital estate above all other legitimate business concerns."). Attributing to a shareholder-spouse income that has been retained by a corporation for corporate purposes does not provide a workable framework for trial courts to assess either the needs of a spouse or a spouse's ability to pay. Moreover, ascertaining whether a corporation was prohibited from making a distribution under section 607.06401(3) or whether undistributed "pass-through" income was retained for corporate purposes involves factual determinations that are properly made on a case-by-case basis.
We conclude that when the issue of whether undistributed "pass-through" income was retained for corporate purposes is contested, the shareholder-spouse should have the burden of proving that the undistributed "pass-through" income was properly retained for corporate purposes rather than impermissibly retained to avoid alimony, child support, or attorney's fees obligations by reducing the shareholder-spouse's amount of available income. The burden is properly on the shareholder-spouse because he or she has the ability to obtain information to establish the propriety of the corporation's actions.
In determining whether the shareholder-spouse has met his or her burden of proving that the undistributed "pass-through" income was retained for corporate purposes, the trial court should consider (1) the extent to which a shareholder-spouse has access to or control over "pass-through" income retained by the corporation, (2) the limitations set forth in section 607.06401(3) governing corporate distributions to shareholders, and (3) the purpose(s) for which the "pass-through" income has been retained by the corporation. Although a shareholder-spouse's ownership interest should be considered, it is not dispositive even where the spouse is a sole or majority shareholder in the corporation and has the ability to control the retention and distribution of the corporation's income. Ownership of capital stock does not entitle shareholders to income that has been retained by an S corporation because shareholders do not have a right to an interest in the corporation's income. See Anson, 772 So.2d at 57 (Peterson, J., concurring specially) ("A stockholder has certain rights in a corporation, but those rights do not include a direct interest in any corporate asset or income...."). In addition, "where the decision to retain earnings was controlled partly by the desires of other shareholders or partly by economic forces requiring that earnings be retained, it seems questionable to assert that the marital estate is being injured merely because the [shareholder-spouse] had to some extent the raw ability to injure it." Brett R. Turner, Classifying the Retained Earnings of a Separate Property Business as Marital Property, 15 Divorce Litig. 141, 148 (2003). Thus, more important than the shareholder-spouse's ownership interest is the purpose for which the undistributed "pass-through" income has been retained by the corporation.

V. This Case
In the present case, the Fifth District properly concluded that Tri Tech's *1234 undistributed "pass-through" income should not be automatically attributed to the husband. However, by including in its remand instructions that the trial court would be prohibited from considering undistributed "pass-through" income to shareholders "unless it can be demonstrated that Tri Tech has delayed distributions of cash for purposes other than corporate requirements," Zold, 880 So.2d at 782, the Fifth District erroneously placed the burden on the nonshareholder-spouse.
As stated above, we conclude that when the issue of whether undistributed "pass-through" income was retained for corporate purposes is contested, the burden should be on the shareholder-spouse, in this case the husband, to prove that the undistributed "pass-through" income was retained pursuant to the requirements of section 607.06401(3) or for other corporate purposes. The burden should not be on the nonshareholder-spouse to prove that the distributions were retained for purposes other than corporate requirements.

CONCLUSION
For the foregoing reasons, we approve the Fifth District decision in this case to the extent that it holds that undistributed "pass-through" income is not automatically attributable to a shareholder-spouse as income under chapter 61. However, we quash the decision below to the extent that its first remand instruction places the burden on the nonshareholder-spouse to prove that the undistributed "pass-through" income was retained for noncorporate purposes.[13] Upon remand the trial court is to make factual findings as to the income available to the husband with the burden on the husband to establish that Tri Tech's undistributed "pass-through" income was retained for corporate purposes. We also approve the Fifth District's second and third remand instructions.[14] We approve the approach set forth in McHugh and disapprove Martinez, Sohacki, and Zipperer to the extent that those decisions apply a bright line rule to determine whether undistributed "pass-through" income should be treated as income under chapter 61.
It is so ordered.
WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] See art. V, § 3(b)(3), Fla. Const.
[2] "Pass-through" income refers to a small business corporation's income, deductions, losses, and credits that pass through to the shareholders of the corporation in accordance with each shareholder's pro rata share of ownership in the corporation, and is reported on each shareholder's individual federal income tax return under the Subchapter S Revision Act of 1982. See 26 U.S.C.A. § 1366 (West Supp.2005).
[3] A close corporation is a corporation "whose stock is not freely traded and is held by only a few shareholders." Black's Law Dictionary 365 (8th ed.2004).
[4] The husband's total immediate obligations consisted of $172,088.50 (a portion of the lump sum award payable within sixty days); $1,797.66 (monthly payment of remainder of lump sum award); $5,000 (monthly payment of permanent periodic alimony); and $520.04 (monthly payment of child support). This total does not include the husband's obligations to pay the premiums on a $500,000 life insurance policy, one-half of the child's expenses, and the wife's attorney's fees.
[5] The husband again raises the issue of his ownership interest in Tri Tech before this Court. We determine that there is no reason to disturb the appellate court's determination that there is competent, substantial evidence to support that the husband owns 57.15428 percent of Tri Tech stock. See generally Berges v. Infinity Ins. Co., 896 So.2d 665, 675-76 (Fla.2004) ("[A]n appellate court will not disturb a final judgment if there is competent, substantial evidence to support the verdict on which the judgment rests.").
[6] Specifically, 26 U.S.C.A. § 1366(a) (West Supp.2005) provides in pertinent part as follows:

§ 1366. Pass-thru of items to shareholders
(a) Determination of shareholder's tax liability.
(1) In general.In determining the tax under this chapter of a shareholder for the shareholder's taxable year in which the taxable year of the S corporation ends ... there shall be taken into account the shareholder's pro rata share of the corporation's
(A) items of income (including tax-exempt income), loss, deduction, or credit the separate treatment of which could affect the liability for tax of any shareholder, and
(B) nonseparately computed income or loss.
....
(2) Nonseparately computed income or loss defined.For purposes of this subchapter, the term "nonseparately computed income or loss" means gross income minus the deductions allowed to the corporation....
[7] See also Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla.1980) ("The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds.").
[8] See also Finley v. Scott, 707 So.2d 1112, 1116 (Fla.1998) ("Consideration of both the bona fide needs of the child and the financial circumstances of each parent complies with [the child support guidelines enumerated in] section 61.30, Florida Statutes (1993).").
[9] See also Rosen v. Rosen, 696 So.2d 697, 699 (Fla.1997) (stating that in deciding whether attorney's fees are appropriate, "the trial court must look to each spouse's need for suit money versus each spouse's respective ability to pay").
[10] Section 61.046 was enacted in 1986. See ch. 86-220, § 113, Laws of Fla. One year later, the Legislature enacted the child support guidelines enumerated in section 61.30. See ch. 87-95, § 3, Laws of Fla. Both sections 61.046 and 61.30 were enacted in response to 1984 federal legislation that amended the Social Security Act to require states to adopt certain specified procedures designed to improve collection of child support, including the enactment of child support guidelines. See Child Support Enforcement Amendments of 1984, Pub.L. No. 98-378; Fla. S. Comm. on Com., CS for SB 670 and CS for SB 224 (1986) Staff Analysis 2-3 (May 7, 1986) (on file with comm.); Fla. H.R. Comm. on HRS, CS for SB 631 (1987) Staff Analysis 1, 2 (June 11, 1987) (on file with comm.).
[11] Of course, this includes imputed income under section 61.30(2)(b), Florida Statutes (2004), for those spouses found to be voluntarily "unemployed or underemployed."
[12] Martinez and Sohacki both concerned "pass-through" income of an S corporation. Although it is unclear whether Zipperer also involved an S corporation, the issue in that case was whether business income that was reported on a spouse's individual federal income tax return but not received by the spouse should be considered income under chapter 61. Thus, Zipperer presents essentially the same question as Martinez, Sohacki, and this case, and the same analysis applies.
[13] The Fifth District's first remand instruction was for the trial court to:

1. Make findings as to the amount of income available to [the husband] for the purposes of support for [the wife], his child and himself without considering any undistributed Subchapter S income to shareholders unless it can be demonstrated that Tri Tech has delayed distributions of cash for purposes other than corporate requirements.
Zold, 880 So.2d at 782.
[14] The Fifth District's second and third remand instructions were for the trial court to:

2. Award such amounts of support for alimony and child support based upon the finding of income available to [the husband].
3. Structure a realistic method of payment of support and equitable distribution, and if awarded, attorney's fees, so that [the husband] has the ability to successfully retire the debt with a sufficient remainder for his living expenses. The payments should not be so large as to guarantee [the husband's] failure to satisfy the obligations imposed by the judgment.
Id.