PARIENTE, J.,
specially concurring.
An eleventh grade female high school student punched another student in the face and broke the student’s nose, then pled no contest to simple battery. The trial court withheld adjudication of delinquency and placed V.K.E. on juvenile probation. She was ordered to pay restitution of $852.66 and two statutory surcharges for domestic violence programs and rape crisis centers. The issue is whether the Legislature intended juveniles to be subject to these surcharges applicable to adult offenders. Because I do not discern a clear expression of. legislative intent for the adult surcharges to apply to juveniles, I agree with the majority that these statutory surcharges are not authorized. The majority has reached the correct result as a matter of statutory interpretation and has acted in accord with the purposes of juvenile sentencing as set forth by the Legislature.
Unlike the $50 in costs for the Crimes Compensation Trust Fund authorized by section 938.03(1), Florida Statutes, sections 938.08 and 938.085 do not expressly authorize the $201 and $151 surcharges for domestic violence programs and rape crisis centers in juvenile delinquency cases. The costs in section 938.03(1) apply to “[ajny person pleading guilty or nolo contendere to, or being convicted of or adjudicated delinquent for, any felony, misdemeanor, delinquent act, or criminal traffic offense,” and to “[a]ny person whose adjudication is withheld.” (Emphasis supplied.) In contrast, nothing in sections 938.08 and 938.085 clearly evinces legislative intent to extend the surcharges to juvenile delinquency proceedings, apart from the fact that juveniles as well as adults can “plead[ ] guilty or nolo contendere to, or [be] found guilty of’ one of the enumerated offenses. I cannot presume from the sparse statutory language in these provisions; set against the more complete expression of legislative intent in section 938.03(1), that the Legislature intended to place the burden of funding domestic violence programs and rape crisis -centers on juvenile delinquents, some of whom may have committed offenses unrelated to either domestic violence or rape.
In his dissenting opinion, Justice Cantero views the reliance on the difference in statutory language as an incorrect application of the principle, expressio unius est exclusio alterius. Neither the majority here nor Judge Sharp in her concurring opinion below, which the majority adopts, explicitly rely on expressio unius. I believe they are instead applying an in pari materia construction by construing these related statutory provisions in harmony with one another. “The doctrine of in pari materia requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature’s intent.” Zold v. Zold, 911 So.2d 1222, 1229 *1284 (Fla.2005). The use of language explicitly encompassing juvenile delinquents in section 938.03(1) and the absence of similar language in sections 938.08 and 938.085 suggest that the Legislature intended a distinction. Courts frequently look to other provisions to conclude that the Legislature “knows how to” accomplish what it has omitted in the enactment in question. See e.g., Costarell v. Florida Unemployment Appeals Comm’n, 916 So.2d 778, 783 (Fla.2005).
At the very least, the difference in the statutory language indicates ambiguity, which under the rules of statutory construction we should resolve by seeking other indications of legislative intent. See Blanton v. City of Pinellas Park, 887 So.2d 1224, 1230 (Fla.2004) (stating that only when statutory language is ambiguous will the Court resort to rules of statutory construction to discern legislative intent). These other -indications appear in statutory provisions articulating the purposes of the juvenile delinquency system and in section 985.221, Florida Statutes, which prohibits court fees in delinquency proceedings.
Both the majority and the dissent construe the surcharges as a -form of punishment, but disagree on whether punishment of this nature serves the purposes of the juvenile justice system. The majority looks to the system’s rehabilitative purposes, while Justice Cantero focuses on provisions authorizing punishment of juvenile delinquents. > The resolution lies somewhere in the middle. Chapter 985, Florida Statutes, which- governs juvenile delinquency proceedings, does have a punitive component, but one which must be individually tailored to the needs of the child, consistent with a second important purpose of the .juvenile justice system, which is to rehabilitate the child. See J.A.S. v. State, 705 So.2d 1381, 1386 (Fla.1998) (noting that juvenile offenders are not held to be criminals and are considered rehabili-tatable) (quoting In re C.J.W., 377 So.2d 22, 24 (Fla.1979)).
Section 985.01 provides that the purposes of the chapter are, inter alia:
(c) To ensure the protection of society, by providing for a comprehensive standardized assessment of the child’s needs so that the most appropriate control, discipline, punishment, and treatment can be administered consistent with the seriousness of the act committed, the community’s long-term need for public safety, the prior record of the child, and the specific rehabilitation needs of the child, while also providing whenever possible restitution to the victim of the offense.
[[Image here]]
(e)l. To assure that the adjudication and disposition of a child alleged or found to have committed a violation of Florida law be exercised with appropriate discretion and in keeping with the seriousness of the offense and the need for treatment' services, and that all findings made under this chapter be based upon facts presented at a hearing that meets the constitutional standards of fundamental fairness and due process.
This language looks to punishment not as an end in itself, but as a means to protect society. And the sanction imposed should be geared to the “specific rehabilitation needs of the child, while also providing whenever possible restitution to the victim of the offense.” Legislative intent that punishment be individualized is also evident in section 985.228(4), which authorizes as a penalty component of juvenile *1285 probation “nonresidential punishment appropriate to the offense.” The goals of individualized treatment, rehabilitation, and punishment are entirely unrelated to the funding of domestic violence programs and rape crisis centers, which broadly focus on addressing the prevention of violence and its harmful consequences throughout the state.
The word that appears perhaps most often in the provisions of chapter 985 setting out the chapter’s purposes and the court’s disposition options is “appropriate.” Imposing surcharges that fund domestic violence programs and rape crisis centers is not appropriate punishment, in the sense of proportionate or commensurate with the offense, for a high school student who has committed simple battery in a school fight. It certainly does not directly foster the goal of rehabilitation.
Finally, I agree that section 985.221, which prohibits court fees from being imposed in juvenile delinquency proceedings, supports the majority. In his dissenting opinion, Justice Cantero discerns from precedent and dictionary definitions that a surcharge or cost can be distinguished from a fee. However, the Legislature has not defined the terms so that we can be sure that it intended this distinction to be applied to sections 938.08, 938.085, and 985.221. In the absence of express language authorizing the “surcharge” in section 938.08 and 938.085 in delinquency proceedings, section 985.221 is an additional indication that imposition of the surcharge on juvenile delinquents is contrary to legislative intent.'
It is my hope that when the Legislature acts in the area of juvenile justice, it seeks to further the goals of the juvenile delinquency system that promote rehabilitation and personal responsibility. If the majority has misconstrued legislative intent, the Legislature can clarify its intent regarding imposition of these surcharges on juveniles by amending the statutes. In the interim, I join the majority in concluding that, consistent with the emphasis on individualized treatment in chapter 985, these surcharges were not intended to be imposed on juveniles.
ANSTEAD, J., concurs.