[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10922

_____

W.P. PRODUCTIONS, INC.,

Plaintiff,

SYDNEY SILVERMAN

Third Party Defendant-Appellant

*versus*

TRAMONTINA U.S.A., INC.,

Defendant,

SAM'S WEST, INC.,

Third Party Plaintiff-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:18-cv-63162-JIC

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Sydney Silverman appeals the district court's grant of summary judgment in favor of Sam's West, Inc.[1]  The district court pierced the corporate veil and held Silverman personally liable for judgments entered in favor of Sam's West against W.P. Productions (WPP).  WPP owed significant debt to Sam's West but brought a tort lawsuit against Tramotina U.S.A., Inc.[2] and Sam's West.  After the court entered a final judgment against WPP in that tort case, Sam's West eventually brought this supplemental lawsuit to pierce WPP's corporate veil and hold Silverman personally liable for WPP's unpaid judgments.  The district court granted summary judgment in favor of Sam's West.  On appeal, Silverman alleges

_____

[1] "Sam's West, Inc." is a corporation that includes "Sam's Club" stores.  Often, including in the briefing, "Sam's West" and "Sam's Club" are used interchangeably.  In this opinion, "Sam's Club" specifically refers to Sam's Club stores.

[2] Tramotina, U.S.A., Inc. was involved in the underlying tort lawsuit brought by WPP.  However, Tramotina has not been involved with the litigation Sam's West brought to pierce WPP's corporate veil.

that the district court improperly pierced the corporate veil on summary judgment. After careful review and with the benefit of oral argument, we **affirm** the district court.

## I.          Factual and Procedural Background

Silverman was the sole shareholder of WPP, which was an S Corporation.[3] Silverman used a shared bank account for his personal funds and WPP's corporate funds. He allegedly used a "scorecard" system to distinguish personal from corporate funds. Between January 2015 and June 2022, Silverman spent $3,248,003 from the shared account. These expenses can be broken up as (1) $2,415,803 on personal expenses[4] charged to WPP and personal credit cards, and (2) $832,200 transferred to himself, his relatives, or their trust funds.

WPP had a license agreement allowing WPP to use Wolfgang Puck's name. WPP sold Wolfgang Puck-branded kitchen products to Sam's Club for Sam's Club to sell in its stores. In 2015, WPP and Sam's Club entered an agreement whereby Sam's Club would feature WPP products in two Instant Savings Booklets in exchange for a set payment from WPP for each unit sold during the two promotions. By April 2016, WPP failed to pay the $1.75 million it owed Sam's Club and entered a Claim Installment

---

[3] S corporations are corporations that elect to pass corporate income, losses, deductions, and credits through to their shareholders for federal income tax purposes. *See* Subchapter S of the Internal Revenue Code, 26 U.S.C. § 1361.

[4] Sam's West had an expert witness analyze the receipts for these purchases. This expert could not discern a business purpose for the purchases.

Payment Agreement.  In May 2016, WPP placed another product in an Instant Savings Booklet, adding $1.2 million to its debt.  In September 2016, WPP made its last payment to Sam's Club but left over $2 million of debt unpaid.  In October 2017, Sam's Club made a written demand to WPP for payment of money.

Silverman shut down WPP in August 2018 while continuing to move money between himself, WPP, and affiliated companies. Later in 2018, in the Southern District of Florida, WPP sued Sam's West alleging, among other things: (1) Sam's West tortiously interfered with WPP's potential relationship with Costco; (2) Sam's West defamed WPP; and (3) Sam's West committed civil conspiracy against WPP. Sam's West filed a counterclaim, which included counts related to WPP breaching a promissory note and contract. In June 2020, the district court entered a $2,672,977.86 judgment for Sam's West against WPP and awarded Sam's West $58,573.50 in attorney's fees in October.  In September 2020, the Florida Secretary of State administratively dissolved WPP.

When Sam's West could not satisfy its judgments against WPP, it initiated these supplemental proceedings pursuant to Florida Statute § 56.29.  Sam's West sought to pierce WPP's corporate veil to add Silverman as a judgment debtor under collateral estoppel and alter ego theories.  In 2021, a magistrate judge issued a Report and Recommendation (R&R) determining that a California court decision established the first element of piercing the corporate veil—shareholder as alter ego of a corporation—but not the

remaining elements of improper conduct or causing an injury. The district judge adopted this R&R.

Both parties then moved for summary judgment regarding whether the second and third elements of piercing the corporate veil in Florida were present as a matter of law. In November 2022, the magistrate judge issued a second R&R stating that the undisputed facts showed Sam's West was entitled to judgment as a matter of law on its veil piercing claim. The district court judge adopted this R&R over Silverman's objections. Silverman timely appealed.

## II.    Applicable Law

"We review grants of summary judgment de novo." *King v. King*, 69 F.4th 738, 742 (11th Cir. 2023) (per curiam). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because this case comes to us under diversity jurisdiction and arose in Florida, we apply the substantive law of Florida. *Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1168 (11th Cir. 2023). Florida's guiding case on piercing the corporate veil does not explicitly address summary judgment where a party seeks to pierce the corporate veil. *See Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984). Regardless of procedural posture, Florida veil-piercing law focuses on whether "improper conduct" occurred. *Id.*

Both parties agree that the following three elements are required to pierce the corporate veil in Florida:

(1) the *shareholder* dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the *shareholders* were in fact alter egos of the corporation;

(2) the corporate form must have been used fraudulently or for an improper purpose; and

(3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (alterations adopted) (quoting *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008) (per curiam)).

Several core ideas guide our analysis of fraudulent or improper purpose under the second element. Improper purposes can include "a subterfuge to mislead or defraud creditors, to hide assets, to evade the requirements of a statute or some analogous betrayal of trust." *Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. Dist. Ct. App. 2000).

"Although an S corporation's net income is taxed directly to the shareholders under the Act, the shareholders do not necessarily receive distributions in an amount equivalent to what is taxed pursuant to the Subchapter S election." *Zold v. Zold*, 911 So. 2d 1222, 1227 (Fla. 2005). This makes taxes unreliable indicators of shareholder income from an S corporation.

In Florida, "an S corporation's authority to make distributions to shareholders is limited by the corporation's articles of

incorporation" and Florida's Rule of Priorities.  *Id.*  Florida's Rule of Priorities requires corporations to refrain from making distributions if doing so would cause the following to occur:

> (a) The corporation would not be able to pay its debts as they become due in the usual course of the corporation's activities and affairs; or
>
> (b) The corporation's total assets would be less than the sum of its total liabilities plus (unless the articles of incorporation permit otherwise) the amount that would be needed, if the corporation were to be dissolved and wound up at the time of the distribution, to satisfy the preferential rights upon dissolution . . . .

Fla. Stat § 607.06401(3).

"A corporation that has been administratively dissolved continues in existence but may only carry on activities necessary to wind up its activities and affairs, liquidate and distribute its assets, and notify claimants . . . ."  *Id.* at § 607.1420(5).  A "dissolved corporation may not carry on any business except that appropriate to wind up and liquidate its business and affairs," which include both "[d]ischarging or making provision for discharging its liabilities" and "[m]aking distributions of its remaining assets among its shareholders according to their interests."  *Id.* at § 607.1405(1)(c)–(d).

### III.    Analysis

The district court did not err by piercing the corporate veil on summary judgment.[5]  Determinations to pierce the corporate veil are fact intensive, but piercing the corporate veil on summary judgment is appropriate where there is no genuine dispute of material fact regarding any relevant element under substantive state law.  *See* Fed. R. Civ. P. 56(a); *see generally Miller v. Harco Nat'l Ins. Co.*, 241 F.3d 1331, 1332–33 (11th Cir. 2001) (per curiam).  Although Florida courts have differed in their approach to piercing the corporate veil at the summary judgment stage, we will not create a categorical ban on granting summary judgment when a case otherwise meets the Rule 56(a) criteria simply because it happens to involve piercing the corporate veil.

After addressing the threshold issue that the corporate veil can be pierced at the summary judgment stage, we find that the undisputed facts regarding Silverman and WPP warrant piercing the corporate veil here.  The parties do not dispute Silverman's status as an alter ego of WPP.  Further, it seems clear that if we find that Silverman used WPP's corporate form for an improper purpose, that use injured Sam's West.  Therefore, our analysis focuses on Florida's second element for piercing the corporate veil.

---

[5] On appeal, Silverman alleges failure to state a claim as a reason he should have received summary judgment.  Denying summary judgment on that ground was proper.  Silverman was not entitled to judgment as a matter of law because Sam's West's complaint plausibly pled all three elements for piercing the corporate veil in Florida.  *See* Fed. R. Civ. P. 56(a).

Finding that Silverman used WPP's corporate form for an improper purpose is the determining factor for finding the district court properly granted summary judgment.

No party contends that WPP was *organized* for an improper purpose, so instead we evaluate whether Silverman *used* WPP for an improper purpose. In Florida, piercing the corporate veil is appropriate when the corporate form was "used fraudulently *or* for an improper purpose." *Molinos*, 633 F.3d at 1349 (emphasis added). Silverman focuses on how he did not deliberately defraud Sam's West, but his argument narrows the inquiry more than Florida law requires. Improper purpose in Florida includes using the corporate form to "evade the requirements of a statute." *Lipsig*, 760 So. 2d. at 187.

We find no genuine dispute of material fact as to whether Silverman used WPP for the improper purpose of evading Florida's statutory Rule of Priorities. Under Florida's Rule of Priorities, Florida corporations cannot make distributions to shareholders if doing so would make the corporation unable to pay its debts as they become due. *See* Fla. Stat. § 607.06401(3)(a). When a shareholder knows a company has dissolved and continues to move corporate money around, the shareholder, by default, is using the corporate form for the improper purpose of violating Florida's Rule of Priorities.

After WPP's dissolution, rather than paying Sam's West, Silverman moved money from his shared personal and corporate account, which undermined the ability of WPP's creditors to recover.

Using WPP's corporate form for the improper purpose of thwarting Florida's Rule of Priorities makes piercing the corporate veil appropriate. The impropriety here became even more pronounced after Florida administratively dissolved WPP, which severely restricted the actions of the corporation. *See id.* § 607.1420(5).

This analysis does not change because WPP was organized as an S corporation. As an S corporation, WPP could pass corporate income, losses, deductions, and credits to Silverman—the sole shareholder. But being an S corporation only impacted the tax structure of WPP. Florida's Rule of Priorities still applies to S corporations like WPP. *See Zold*, 911 So. 2d at 1227–28.

Finally, the S corporation designation undermines Silverman's consistent claim that the money he spent came from his "personal funds." Silverman's "scorecard" tells us little, and Silverman claims that the funds were personal because he paid income taxes on them. As *Zold* instructs, "an S corporation's net income is taxed directly to the shareholders" but this does not mean shareholders "receive distributions in an amount equivalent to what is taxed pursuant to the Subchapter S election." *Id.* Silverman's taxes do not indicate his amount of personal funds, which supports that Silverman spent WPP's funds. The absence of a genuine dispute of material fact regarding Silverman's spending supports the propriety of piercing the corporate veil here.

In sum, the district court correctly found no genuine dispute of material fact regarding the three elements for piercing the

23-10922                Opinion of the Court                11

corporate veil in Florida: (1) Silverman was the alter ego of WPP; (2) Silverman used WPP for the improper purpose of evading Florida's Rule of Priorities; and (3) this improper use of WPP's corporate form caused injury to Sam's West.

Therefore, we **AFFIRM** the district court's grant of summary judgment in favor of Sam's West and piercing the corporate veil.

**AFFIRMED.**