BROWNING, J.
Daniel J. Kusterer, the former husband, appeals a Final Judgment of Modification and Order of Contempt increasing his child-support obligation, finding him in contempt, and awarding attorney’s fees and costs to Appellee, Lorrie A. Nelson, the former wife. Lacking the benefit of the recent decision in Zold v. Zold, 911 So.2d 1222 (Fla.2005), the trial court adopted a bright-line rule by including “pass-through” income from the former husband’s Subchapter S corporation (that allegedly was not actually distributed to shareholders) in determining the former husband’s available “income” within the meaning of chapter 61, Florida Statutes (2004), for purposes of calculating his appropriate child-support obligation.* Zold expressly disapproved certain prior district court decisions, by which the trial court felt bound, which had espoused a bright- *544 line rule. See id. at 1224 & 1234. We reverse the Pinal Judgment of Modification and Order of Contempt in part and remand for further proceedings, including the presentation of additional evidence, if necessary, to allow the trial court to make findings of fact regarding Former Husband's “income” in light of the considerations and analysis set forth in Zold. We do not disturb the trial court’s findings, supported by competent substantial evidence, that Former Husband is in contempt for failing to pay child support in the amount awarded in the final judgment of dissolution of marriage, that he has the ability to pay child support in the amount originally ordered, and that the arrearages should be reduced to judgment. See Chap. 61, Fla. Stat. (2004); Gibson v. Bennett, 561 So.2d 565 (Fla.1990) (setting forth trial court’s equitable powers to enforce former spouse’s child-support obligation).
The parties were married in Minnesota in 1981. Three children were born during the marriage. The former wife filed a petition to dissolve the parties’ marriage in 1995, by which time the parties lived in Florida. The parties resolved their respective rights and obligations in a marital settlement agreement. During the dissolution proceedings, the former wife was represented by counsel. Section (ll)(h) of the marital settlement agreement stated that although he had sufficient time and funds to retain an attorney, the former husband was electing to proceed without the benefit of legal representation. In the May 1995 final judgment of dissolution, the trial court approved and incorporated the parties’ marital settlement agreement and reserved jurisdiction to enforce and modify the terms of the agreement as is legally permissible.
Pursuant to section (5)(a) of the marital settlement agreement, the former husband agreed that the former wife and the minor children would move to, and reside in, Minnesota at the end of the 1994-95 school year. Section (6)(a) of the agreement provided for the former husband’s reasonable, liberal, and frequent visitation with the children. The parties expressly contemplated six weeks of summertime visitation, one half of the Christmas and Easter/Spring Break vacations, and any other times and dates on which they agreed. Section (6)(d) provided that the former husband would pay one-half of the children’s round-trip transportation costs for purposes of visitation. Pursuant to section (7), the former husband agreed to pay, “as and for child support ... for the minor children,” $720.00 a month. Section (7)(a)(I)-(vi) addressed the various circumstances that would terminate the child-support obligation, including a child’s reaching the age of 18 (subject to certain exceptions not pertinent to this appeal). The parties agree that the marital settlement agreement did not set forth any specific procedure to be followed for effecting a reduction in child support upon the occurrence of one or more of the terminating events. In accordance with the parties’ extensive visitation plan for the summer vacation, the agreement provided for child support to be abated in the months of June and July. Pursuant to section (7)(b), the former wife agreed to maintain and pay for medical, dental, and vision insurance for the children’s benefit, through her employment. Under section (7)(e), the former husband agreed to pay 50% of the reasonable and necessary medical, dental, and vision expenses not covered by the medical insurance.
In November 2003, the former wife filed a supplemental petition for modification (Count One) and motion for contempt and enforcement (Count Two). The first count alleged that since the final judgment of dissolution, four substantial and material changes in circumstances had occurred, *545 necessitating an adjustment in child support: 1) the oldest child reached age 18; 2) the former husband exercised his visitation rights significantly less than contemplated in the marital settlement agreement, thereby rendering inappropriate the June-July abatement of his support obligation; 3) the former husband’s income and ability to pay child support increased; and 4) the two remaining minor children needed additional child support. The second count alleged that the former husband had unilaterally decided to reduce the amount of his child-support payments without consulting the former wife and without seeking court approval. The supplemental petition alleged the former wife’s need, and the former husband’s ability to pay, her attorney’s fees and costs.
The former husband filed a response stating, as to Count One, that the anticipated visitation schedule had proved impractical and quite costly due to the distance between his Florida residence and the Minnesota residence of the former wife and their children. He alleged also that as the minor children grew older, their interests and friendship ties at home lessened them desire to visit as often with their father. The former husband asserted, without dispute, that once the parties realized the original visitation schedule was unworkable, they agreed for him to pay, as child support, the same $7,200.00 a year, but in twelve installments of $600.00 each rather than in ten installments of $720.00 each. The former husband acknowledged that he had made the $600.00 monthly payments for a time but then unilaterally reduced his monthly payments to $400.00 after the oldest child left the household.
In February 2004, the former husband filed his own supplemental petition to modify child support downward to $400.00 a month based on the oldest child’s having attained age 18, and eventually to reduce the monthly payment to $200.00 based on the middle child’s soon turning 18 years old and anticipating graduation from high school. The former husband also moved to set aside the original visitation schedule so that he and the children could devise a mutually advantageous, workable plan. He requested attorney’s fees and costs.
The modification requests were brought to a hearing in February 2005, where the former wife was represented by counsel and the former husband appeared without legal representation. After hearing the testimony and reviewing the voluminous record of the parties’ financial documents, the trial court issued the Final Judgment of Modification and Order of Contempt, which 1) entered a judgment on the pleadings for the accrued arrearage in child support; 2) accepted the former wife’s request for a 5% upward deviation from the child-support guidelines based on the former husband’s failure to exercise full visitation and the former wife’s corresponding additional expenses for the children. In calculating “income” for purposes of determining child support, the trial court relied on Zipperer v. Zipperer, 567 So.2d 916 (Fla. 1st DCA 1990); and Sohacki v. Sohacki, 657 So.2d 41 (Fla. 1st DCA 1995), for the proposition that the court had to include the former husband’s Subchapter S “pass-through” income, even if said income represented earnings retained by the corporation and not distributed to the shareholders. The trial court found the former husband to be in contempt for failing to pay the amount awarded for child support in the final judgment of dissolution. The court deemed him able to pay $600.00 a month, as well as the full arrearage amount of $13,776.29, with such arrearage to be paid from the former husband’s IRA account. Given the finding of contempt, and the attendant necessity of the former wife’s incurring attorney’s fees and costs to initiate modification proceedings, the *546 trial court awarded her entire attorney’s fees and costs. As to the modification proceeding itself, the court awarded her entire attorney’s fees and costs pursuant to section 57.105, Florida Statutes (2004); and Rosen v. Rosen, 696 So.2d 697 (Fla. 1997). The court reasoned that if the former husband “had employed a reasonable method of handling his representation in this case,” the number of documents requested and filed, the number of issues raised, and the time spent litigating would have been significantly reduced. The court reserved jurisdiction over the issue of attorney’s fees and costs in case the parties are unable to agree on the amounts thereof.
In this appeal (in which he is represented by counsel), the former husband asserts as error the trial court’s 5% increase in his child-support obligation based on his significantly reduced visitation (Issue One); the award of attorney’s fees and costs to the former wife (Issue Two); the inclusion of the former husband’s Subchapter S “profits” in his “income” when calculating the child-support obligation (Issue Three); and, in calculating child support, the inclusion of a health insurance premium that the former wife allegedly does not pay and is in the wrong amount.
Because our ruling on Issue Three affects the overall calculation of the parties’ respective child-support obligations, we address it first. Section 61.046(7), Florida Statutes (2004), states that “[a]s used in this chapter,” “ ‘income’ means any form of payment to an individual, regardless of source, including, but not limited to: wages, salary, commissions, and bonuses, ... dividends, interest, ... and any other payments, made by any person, private entity, ...” The child-support guidelines statute is section 61.30, Florida Statutes (2004), subsection (2)(a) of which provides in pertinent part:
(2) Income shall be determined on a monthly basis for the obligor and for the obligee as follows:
(a) Gross income shall include, but is not limited to, the following items:
1. Salary or wages.
2. Bonuses, commissions, allowances, overtime, tips, and other similar payments.
3. Business income from sources such as self-employment, partnership, close corporations, and independent contracts. “Business income” means gross receipts minus ordinary and necessary expenses required to produce income.
Although these two statutes use different wording to define “income,” “both statutory provisions focus on income that is available to a spouse.” Zold, 911 So.2d at 1229; see § 61.30(6) (stating that presumptive amount of child support is based on parties’ “combined monthly available income”).
The former husband testified that he and his former fiancee, Sheila Howard, are business partners and principal stockholders in DJ’s Metal Fabrication, Inc. (DJ’s Metal), which was formed in 1999 and is essentially a welding shop with about five employees aside from the former husband and Ms. Howard. The former husband also has a separate business, Daniel Kus-terer Drafting, which produces the drafting plans for work to be done in the welding shop, as well as for other work.
A “close corporation” or “closely held corporation” is “[a] corporation whose stock is not freely traded and is held by only a few shareholders (often within the same family).” Black’s Law Dictionary 365 (8th ed.2004). A Subchapter S corporation is an entity “whose income is taxed through its shareholders rather than through the corporation itself,” and “[o]nly corporations with a limited number of *547 shareholders can elect S-corporation tax status under Subchapter S of the Internal Revenue Code.” Black’s Law Dictionary 368 (8th ed.2004); see I.R.C. §§ 1361 et seq.; Gitlitz v. Comm’r of Internal Revenue, 531 U.S. 206, 214 n. 6, 121 S.Ct. 701, 148 L.Ed.2d 613 (2001) (“The very purpose of Subchapter S is to tax at the shareholder level, not the corporate level.”). “Undistributed profit” or “retained earnings” are “[a] corporation’s accumulated income after dividends have been distributed.” Black’s Law Dictionary 548 (8th ed. 2004).
At its inception, DJ’s Metal was a 50-50 partnership of the former husband and Ms. Howard. Ms. Howard testified that soon afterwards, they realized it was difficult to reach final decisions when both individuals had an equal interest. The two of them revised the ownership arrangement to give her a 52% share and him a 48% share of the corporation. She testified that the former husband pays taxes on 48% of the annual profits of the corporation, but that this money is not distributed to him. In 2003, he was taxed personally on $25,913.00, or 48%, of the $53,987.00 in retained earnings. Ms. Howard testified that the $25,913.00 share of corporate profits shown on the former husband’s personal income tax form was not actually distributed to him, nor did she receive such monies. Instead, the profits were retained in the corporation. She testified it is neither his, nor her, money to spend. DJ’s Metal has never declared and paid a shareholder’s dividend since its inception. The former husband has never withdrawn any money from the business other than his salary. Ms. Howard indicated that the two shareholders recognized the importance of keeping some money as a cash reserve in any newly formed corporation to purchase materials. She described month-to-month business receipts as “extremely unpredictable” due to the ebb and flow of business activity. They tried to maintain at least $50,000.00 as operating capital. At the time of the hearing, DJ’s Metal had $81,000.00 in equipment and vehicle debt, which Ms. Howard and the former husband guaranteed personally. Ms. Howard testified that the former husband’s annual salary was $17,280.00 (1999), $23,780.00 (2000), $23,780.00 (2001), $30,160.00 (2002), $35,000.00 (2003), and $35,000.00 (2004). The benefits of the corporation comprised four paid holidays per year. The corporation had no health insurance benefits and paid no bonuses or commissions. It had an IRA retirement program. In 2003, the former husband had a net income of $6,457.00 from his drafting business. On his financial affidavits, the former husband reflected his W-2 income from DJ’s Metals and his income from the drafting business. He did not include the Subchapter S profits that were not distributed to him. In the trial court and on appeal, the former wife contended that these Subchapter S profits necessarily constitute “business income” to be factored into the determination of the former husband’s “income” for purposes of calculating his appropriate child-support obligation under section 61.30. Relying expressly on our opinions in Zipperer and Sohacki, the trial court ruled that the former husband’s percentage share of the Subchapter S profits must be included in his “income.” Given the analysis set forth in Zold, 911 So.2d at 1222, the trial court on remand can recalculate Former Husband’s available “income.”
Zold v. Zold, 880 So.2d 779 (Fla. 5th DCA 2004), was an appeal of a final judgment of dissolution of marriage. Mr. Zold was the chief executive officer of a close corporation, Tri Tech, the capital stock of which was owned by him and one other stockholder. Tri Tech was the source of all of Mr. Zold’s income. Because Tri Tech and its two shareholders had elected *548 to be taxed under Subchapter S, all the corporate income “passed through” to shareholders according to their percentage ownership in its corporate stock. This “pass through” income was reported on the shareholders’ individual federal income tax returns. See id. at 779-80. It is notable that “[ajlthough all of the corporate income must be reported and taxed, the individuals do not necessarily receive distributions of cash equal in amount to the income subject to taxation. Only that amount of cash is distributed in excess of what must be retained for corporate purposes.” Id. at 780. The trial court in Zold included in the husband’s “income” (for purposes of determining support and equalizing marital assets) all of Mr. Zold’s Subchapter S share of Tri Tech’s income, and it considered the corporation’s cash as available to the husband for meeting obligations established in the final judgment and the award of attorney’s fees. See id. at 780-81. The trial court looked to the balance sheet to determine Tri Tech’s available income, even though a balance sheet “shows assets, liabilities, and owners’ equity,” but not available income. Id. at 781. The Fifth District Court noted that “[ajlthough balance sheets show cash on hand, the same does not represent income available for distribution to its shareholders.” Id. The district court concluded that the record did not support the trial court’s conclusion that the cash on hand shown on the balance sheets represented income that was available for distribution by Tri Tech to its shareholders without endangering corporate operations. See id. Because the trial court apparently misper-ceived that all the “pass-through” Sub-chapter S income was available personally to Mr. Zold to use for non-corporate purposes, the district court vacated portions of the final judgment and remanded for reconsideration. The trial court was instructed, inter alia, to make findings regarding the amount of income available to Mr. Zold for purposes of supporting himself, his former wife, and his child, without considering undistributed Subchapter S income to shareholders “unless it can be demonstrated that Tri Tech has delayed distributions of cash for purposes other than corporate requirements”; and to award alimony and child support based on a finding of income actually available to Mr. Zold. See id. at 782.
The district court in Zold addressed the competing considerations and explained why the determination of what is “income” for purposes of child support or alimony is, to an extent, fact-driven rather than merely a mechanistic bright-line application of a static rule of law:
When a corporation has more than one shareholder, an officer/shareholder has a fiduciary duty to all shareholders. The corporation is not the personal piggy bank for any one shareholder simply because that shareholder may have a controlling interest in the corporation and is also the chief executive officer. Financial responsibilities to creditors and employees must be satisfied before distributions to shareholders take place if a corporation is to remain viable. Once the distributions are found to be possible, the distributions must be pro-rata in accordance with the percentage ownership of the capital stock of the corporation. Court ordered obligations in marital litigation should not place an ex-marital partner in the position of having to breach a corporate fiduciary obligation in order to avoid the possibility of a court finding that partner contemptuous.
Id. at 781. In other words, where a spouse is merely one of a number of shareholders in a Subchapter S corporation, his or her “income” for purposes of determining support may depend on factors such as *549 fiduciary duties, statutory restrictions, and the availability of, access to, and control over, income personally for distribution for non-corporate purposes, which are matters appropriate for the trial court to determine in its fact-finding capacity. See § 607.06401(1) & (3), Fla. Stat. (2004) (acknowledging limiting effect of articles of incorporation on Florida Subchapter S corporation’s authority to make distributions, and prohibiting such corporation from making distributions under certain circumstances); Zold, 911 So.2d at 1227 (“Although an S corporation’s net income is taxed directly to the shareholders under the [1982] Act, the shareholders do not necessarily receive distributions in an amount equivalent to what is taxed pursuant to the Subchapter S election.”); Alexander Caballero and Ingrid Anderson, “What Defines Income Under F.S. Ch. 61: From a Business Perspective,” 78 Fla. B.J. 66, 67 (Nov.2004).
In Zold, 911 So.2d at 1222, the Supreme Court of Florida approved the Fifth District Court’s decision “to the extent that it holds that undistributed ‘pass-through’ income is not automatically attributable to a shareholder-spouse as income under chapter 61.” Id. at 1234. However, the supreme court held that the district court had misplaced the burden of proof in those instances, such as the case at bar, where an issue exists as to whether undistributed pass-through income was retained for corporate purposes. The correct procedure is as follows:
[W]hen the issue of whether undistributed “pass-through” income was retained for corporate purposes is contested, the shareholder-spouse should have the burden of proving that the undistributed “pass-through” income was properly retained for corporate purposes rather than impermissibly retained to avoid alimony, child support, or attorney’s fees obligations by reducing the shareholder-spouse’s amount of available income. The burden is properly on the shareholder-spouse because he or she has the ability to obtain information to establish the propriety of the corporation’s actions.
Id. at 1233.
Like Mr. Zold, the former husband owns only a partial share of a Subchapter S corporation; the former wife is not the other shareholder. Because the issue of the circumstances underlying the Subchap-ter S corporation’s retention of funds is contested in this case, the former husband (as the shareholder-spouse) has the burden of proof under Zold. See id. Accordingly, on remand, the trial court is instructed first to make findings consistent with the analysis in Zold as to the amount of the former husband’s income for purposes of determining child support. Consonant with the reasoning in Zold and McHugh v. McHugh, 702 So.2d 639 (Fla. 4th DCA 1997), the trial court also may consider any evidence that might suggest that the Sub-chapter S corporation was withholding or delaying the distribution of profits for purposes other than corporate requirements. See Zold, 911 So.2d at 1231-32; McHugh, 702 So.2d at 642 n. 1. The trial court may hear additional evidence if it is deemed necessary in the interest of justice.
Given the need for the trial court to reconsider the evidence pursuant to the ruling in Zold and to make findings of fact as to what the former husband’s “income” is for child-support purposes, we reverse the trial court’s ruling as to Issues One and Three. For the trial court’s benefit on reconsidering the evidence regarding income, we note that competent, substantial evidence supports the conclusion that the former wife — who is responsible for maintaining and paying for the children’s health insurance according to the marital settle *550 ment agreement — was paying a premium of $370.93 a month, and that the premium remained the same irrespective of whether the coverage was of the parties’ youngest child or also covered the child of the former wife’s current husband, who also resided with them.
As the former husband concedes that he cannot appeal the non-final award of attorney’s fees until the trial court determines the amount, we decline to address this premature Issue Two any further. See Thomas v. Thomas, 902 So.2d 881 (Fla. 1st DCA 2005).
The Final Judgment of Modification and Order of Contempt is AFFIRMED regarding the finding of contempt and the imposition of arrearages, REVERSED as to the upward modification of child support, and REMANDED for further proceedings consistent with Zold, with instructions to the trial court to determine the former husband’s income for purposes of determining child support.
BENTON and PADOVANO, JJ., concur.

 " 'Pass-through' income refers to a small business corporation's income, deductions, losses, and credits that pass through to the shareholders of the corporation in accordance with each shareholder's pro rata share of ownership in the corporation, and is reported on each shareholder's individual federal income tax return under the Subchapter S Revision Act of 1982.” Id. at 1224 n. 2; see I.R.C. § 1366.