NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


DANIEL BAIR and QUALITY BOATS        )
OF CLEARWATER, INC.,                 )
                                     )
            Appellants,              )
                                     )
v.                                   )        Case No. 2D16-272
                                     )
LAURA BAIR,                          )
                                     )
            Appellee.                )
_____ )

Opinion filed March 22, 2017.

Appeal from the Circuit Court for Pinellas
County; George M. Jirotka, Judge.

Michael J. Park and Joseph R. Park of Park,
Ossian, Barnaky & Park, P.A., Clearwater,
for Appellant Daniel Bair.

Stephen O. Cole and Nancy S. Paikoff of
Macfarlane Ferguson & McMullen,
Clearwater, for Appellant Quality Boats of
Clearwater, Inc.

Peter N. Meros, St. Petersburg, for Appellee.


VILLANTI, Chief Judge.

            Daniel Bair (the Husband) appeals various aspects of the final judgment of

dissolution of his marriage to Laura Bair (the Wife).  Because the trial court made errors

of law in determining the value of the marital portion of the Husband's interest in his

nonmarital business, Quality Boats of Clearwater, Inc., and because the trial court improperly applied the supreme court's decision in Zold v. Zold, 911 So. 2d 1222 (Fla. 2005), when determining the Husband's income, we reverse the portions of the final judgment dealing with equitable distribution, alimony, and child support and remand for further proceedings.[1]

**Facts**

The Husband filed his petition for dissolution in October 2012, after almost fourteen years of marriage. Prior to trial, the parties agreed on a time-sharing schedule with their three minor children and on the allocation of certain expenses relating to the children. They also agreed on the disposition of the marital home and the division of the household furnishings. However, the parties disagreed on the value of the marital portion of the Husband's nonmarital business, the distribution of certain other marital assets and liabilities, and the amount and duration of alimony payable to the Wife.

The trial court held a three-day hearing on these issues in February 2015. At the close of the hearing, the trial court requested that the parties submit written closing arguments and proposed final judgments, which the parties did during March

---

[1]The Husband also argued on appeal that the trial court's eight-month delay in signing the final judgment after the final hearing required reversal. While we are concerned with this lengthy delay, we do not find this to be an independent ground for reversal in this case, which involves nine alleged factual inaccuracies in a 52-page final judgment, none of which were critical to the disposition of the parties' assets and only one of which was critical to the determination of alimony. Compare McGoldrick v. McGoldrick, 940 So. 2d 1275, 1276 (Fla. 2d DCA 2006) (reversing final judgment entered eight months after the hearing because its findings were "inconsistent, confusing, and contradictory"), with McCartney v. McCartney, 725 So. 2d 1201, 1202 (Fla. 2d DCA 1999) (finding an eight-month delay in issuing a final judgment "not acceptable" but declining to reverse for a new trial because it "would only cause additional time, delay, and expense for the litigants").

2015.  However, for reasons not apparent from the record, the trial court did not enter the final judgment of dissolution until October 26, 2015.  The Wife filed a timely motion for rehearing, which the trial court granted in part.  The court entered a supplemental final judgment addressing the issues on rehearing on December 7, 2015.  The Husband then filed this appeal, challenging several aspects of the supplemental final judgment.

**Equitable Distribution**

The Husband raises two issues relating to the equitable distribution of the parties' assets and liabilities, both of which have merit.  The trial court's errors on these two issues require us to reverse the equitable distribution scheme and remand for redetermination of the value of the marital portion of the Husband's nonmarital business and for redistribution of the parties' assets and liabilities.

**I.      Valuation of Quality Boats**

The largest asset at issue in this dissolution proceeding was the marital portion of the Husband's nonmarital interest in his family business, Quality Boats.  Testimony at the hearing established that the Husband's father started Quality Boats when the Husband and his siblings were young children.  As teenagers, the Husband and his brother began working at Quality Boats.  Over time, they took on more responsibility, and the Husband's father gifted them small amounts of stock in the company.

When the parties married, the Husband was working full-time for Quality Boats and owned a small share of the company's stock.  When the Husband's father later passed away, he left the company to his three children—the Husband, his brother, and his sister.  The Husband, who sits on the board of directors and owns 47.5% of the

company stock, runs the service side of Quality Boats and also deals with all the financial and administrative aspects of the business while his brother, who also sits on the board and owns another 47.5% of the stock, is in charge of sales. Their sister, who owns the remaining 5% of the stock, is not involved in any day-to-day operations of the company; however, her interests are represented by a third member of the company's board of directors, who is also the company's long-time outside accountant.

During the dissolution proceedings, there was no dispute that the Husband's ownership interest in Quality Boats was nonmarital; however, there was also no dispute that the Husband's marital labor had contributed to an increase in the value of Quality Boats during the marriage. This increase in value resulting from the Husband's marital labor constitutes a marital asset under section 61.075(6)(a)(1)(b), Florida Statutes (2012), which defines "marital assets" to include "[t]he enhancement in value and appreciation of nonmarital assets resulting . . . from the efforts of either party during the marriage." Hence, the trial court was required to determine the amount of the increase in the value of Quality Boats that occurred during the marriage due to the Husband's marital labor and equitably distribute that increase as a marital asset.

Almost two full days of the three-day final hearing were devoted to testimony from the parties' respective experts concerning the 2012 value of Quality Boats and the amount of appreciation due to the Husband's marital labor.[2] Ultimately,

_____

[2]Quality Boats had been valued for estate tax purposes when the Husband inherited his interest, and the parties accepted that valuation for purposes of determining the "starting value" of the Husband's interest. Thus, the testimony at the hearing was directed solely to the value of Quality Boats as of the date of filing the dissolution petition in 2012. The difference between the "starting value" and the 2012 value was the total appreciation that occurred during the marriage. From that total

- 4 -

the trial court accepted the 2012 valuation of Quality Boats proposed by the Wife's expert, which was approximately $1 million more than the valuation proposed by the Husband's expert. The trial court also accepted certain positions advanced by the Wife's expert about how to calculate the portion of the increase that was due to the Husband's marital labor.

In this appeal, the Husband contends that the trial court made five separate errors of law when determining the marital portion of the increased value of Quality Boats. While we agree with the Husband as to only two of these alleged errors, these two errors require us to reverse the valuation and remand for the trial court to redetermine the increased value of Quality Boats, recalculate the marital portion of that increased value, and revise the equitable distribution scheme accordingly.

## A. Quality Boats' Real Property

The Husband first correctly contends that the trial court erred by failing to include the value of the real property owned by Quality Boats in its valuation of the company. This egregious error of law, standing alone, requires us to reverse the equitable distribution scheme.

The evidence at the hearing showed that Quality Boats owns two parcels of real property in Pinellas County which, together with the buildings thereon, comprise the sales and service locations. Despite undisputed evidence that Quality Boats owns this real property, the Wife's expert refused to include the value of the real property in his valuation of the company because he believed that the value of the real property

appreciation, the trial court was to determine the portion resulting from the Husband's marital labor, which amount would constitute the marital asset subject to distribution.

had changed solely due to passive market forces rather than due to the Husband's active management. Regardless of whether this is true as a factual matter, the exclusion of this real property from the value of Quality Boats constituted an error of law for two reasons.

First, excluding a major asset owned by a company from the valuation of that company is legally incorrect because the value of any company comprises all the company's assets and liabilities. To attempt to value a company while excluding several major assets owned by it, as the trial court did here, is plain error. See, e.g., Randolph v. Randolph, 626 So. 2d 342, 343 (Fla. 5th DCA 1993) (noting that the value of a corporation is determined by both the value of all its assets and the amount of its liabilities and that it is error to exclude either one). In other words, the sum of all parts, not a select few, is what encompasses a business's "value."

Second, excluding the appreciation or depreciation of certain company assets as "passive" is improper when one party's marital labor contributed to the change in value of the company as a whole. As the Fourth District has explained, "asset appreciation constitutes a marital asset subject to equitable distribution where marital labor contributes to its value, notwithstanding that the increased value is primarily created passively by inflation, market conditions, or the conduct of others." Chapman v. Chapman, 866 So. 2d 118, 119 (Fla. 4th DCA 2004) (emphasis added) (quoting Pagano v. Pagano, 665 So. 2d 370, 372 (Fla. 4th DCA 1996)).

For both of these reasons, the trial court's decision to exclude the value of Quality Boats' real property when valuing Quality Boats as an asset constituted legal error. The trial court had no discretion to pick and choose which company assets to

include in its valuation of the company as a whole. Further, even if some of the appreciation or depreciation of some of the assets of Quality Boats resulted from passive market forces, the overall appreciation of Quality Boats resulted from the Husband's marital labor, at least in part, and so the portion of the overall appreciation resulting from the marital labor was subject to equitable distribution.

We recognize that there are times when the active or passive nature of appreciation does determine whether that appreciation constitutes a marital asset. For example, if the Husband—rather than Quality Boats—owned the real property, any passive appreciation or depreciation in the value of that real property might be excluded from the definition of "marital assets." See Kaaa v. Kaaa, 58 So. 3d 867, 872 (Fla. 2010) (explaining when passive appreciation of nonmarital real property may constitute a marital asset); see also Pagano, 665 So. 2d at 372 (noting that a purely passive change in the value of a nonmarital asset not enhanced by marital labor is not a marital asset subject to equitable distribution). But here, the asset at issue is Quality Boats, the value of which was indubitably increased by the Husband's marital labor. Because of that marital labor, the law relating to purely passive increases in the value of nonmarital assets simply does not apply.

In sum, we hold that the trial court erred as a matter of law by excluding the value of the real property owned by Quality Boats from its valuation of the company. And because it was undisputed that the value of the real property on U.S. 19 had decreased significantly due to the construction of a huge overpass directly in front of the sales location, this error resulted in the trial court overstating the value of Quality Boats on the date of filing by almost $1 million. Therefore, we reverse the equitable

distribution scheme and remand for the trial court to recalculate the value of Quality Boats as of the date of filing, including all of its assets and liabilities as required by Florida law, to determine the marital portion of any increase in the value of Quality Boats, and to distribute that asset equitably.

B.      Retained Earnings

Next, the Husband contends that the trial court erred by including the value of the retained earnings of Quality Boats in its valuation of the company but then also requiring Quality Boats to liquidate those retained earnings and distribute them to the shareholders.  We agree that the trial court made legal errors on this issue as well.

As noted above, the issue facing the trial court was a determination of the value of Quality Boats as a company, which requires valuation of all of the company's assets, including any retained earnings.  "Retained earnings" are "[a] corporation's accumulated income after dividends have been distributed."  Retained Earnings, Blacks Law Dictionary (10th ed. 2014) (emphasis added).  "If the corporation retains assets acquired from earnings . . . rather than distributing them as dividends to shareholders, the value of the outstanding capital stock should appreciate . . . ."  Anson v. Anson, 772 So. 2d 52, 54-55 (Fla. 5th DCA 2000).  As a corollary, if earnings are distributed rather than retained, the value of the company should be lower as it holds fewer assets. Hence, proper valuation of the company requires an upfront determination of whether earnings are retained or distributed.

Here, if the court wanted to value Quality Boats including the retained earnings it held and distribute that value, it could do so.  But having done so, it could not then order distribution of the retained earnings while still valuing Quality Boats as if the

retained earnings were retained as this would result in impermissibly including the same asset twice. See Diffenderfer v. Diffenderfer, 491 So. 2d 265, 267 (Fla. 1986) (noting that injustice will result if a trial court is permitted to consider the same asset twice, such as for both property distribution and support obligations); cf. Ghen v. Ghen, 575 So. 2d 1342, 1343-44 (Fla. 4th DCA 1991) (reversing dissolution judgment in which the trial court both reduced the value of the husband's business by the amount of a particular liability and then also reduced his income by the same liability). By both including the retained earnings in the value of Quality Boats and then ordering them liquidated and distributed, the trial court erroneously "double dipped" in favor of the Wife.

Moreover, the trial court's order regarding the "distribution" of Quality Boats' retained earnings represents a fundamental misunderstanding of what retained earnings actually are. The trial court treated the retained earnings account of Quality Boats as if it were some type of corporate savings account, which it is not. As has been explained:

> 1. The retained earnings account of a corporation is a bookkeeping account maintained to keep a historical record of net income, net losses, dividend distributions, and other matters affecting the equity of a corporation. It is not a cash or asset account, nor does it reflect any amounts of cash or funds available for distribution to stockholders. In fact, a corporation could have a balance in a retained earnings account, yet have no cash to pay any dividends.
> 2. A balance in a retained earnings account does not mean that dividends must be paid to stockholders. In order to conduct a business, a corporation m[u]st always maintain working capital, purchase fixed assets, maintain accounts receivable, and maintain inventory among other things, all of which[] reduces cash available for dividends. The extent to which these requirements must be maintained fluctuates from year to year.
> 3. A corporation is a recognized separate legal entity capable of owning its own assets and managing its own

business.  A stockholder has certain rights in a corporation, but those rights do not include a direct interest in any corporate asset or income nor do these rights include an interest in a corporate bookkeeping account.

Anson, 772 So. 2d at 56-57 (Peterson, J., concurring) (emphasis added).  Moreover, "[a]ssets acquired through corporate earnings are corporate assets until payments are made for services or as dividends."  Id. at 54.

Given all of these basic principles, it is evident that it was error for the trial court to treat Quality Boats' entire retained earnings account balance as if it were cash and order its distribution.  This is particularly true because it was undisputed that the retained earnings account included substantial amounts for inventory and accounts receivable.  It was also error for the trial court to proceed as if the Husband—unquestionably a minority shareholder—had a direct interest in the retained earnings of Quality Boats and the legal ability to order distribution of those earnings, contrary to both corporate law and the long-established business practices of Quality Boats.  These two errors resulted in a valuation of Quality Boats that was calculated in a legally impermissible manner.  Therefore, on remand the trial court must reconsider the valuation of Quality Boats after applying the proper legal standards for valuing retained earnings.

C.    Amount of Appreciation Due to the Husband's Labor

Next, the Husband contends that the trial court erred by adopting the Wife's expert's determination of the percentage of the appreciation of Quality Boats that was attributable to the Husband's efforts.  On the facts presented here, we disagree.

As noted above, the Husband owns 47.5% of the shares of Quality Boats, his brother owns 47.5% of the shares, and his sister owns 5% of the shares.  The

Husband's sister performs no services for the business, and it is run entirely by the Husband and his brother. While the business has other employees, it was clear from the testimony that the Husband and his brother control the business operations, albeit with some input from the third member of the board of directors.

The Wife's expert testified that he valued the Husband's share of the appreciation of Quality Boats by multiplying the Husband's ownership interest of 47.5% by the total appreciation during the marriage. He did not reduce or adjust this figure to account for any effort or labor of anyone else working for the business. The Husband takes exception to this methodology, pointing out that ownership interest is not necessarily the same as the amount of effort that went into the business to cause the appreciation. While the Husband is correct when this assertion is considered as a broad proposition, he is not correct that this assertion resulted in reversible error on the facts as presented here.

For the appreciation of an otherwise nonmarital asset to constitute a marital asset, the appreciation must "result[ ] . . . from the efforts of either party during the marriage." § 61.075(6)(a)(1)(b). When "distributing such a marital asset, the court is required to make specific findings regarding the value of the enhancement and appreciation during the marriage, including which portion of that enhanced value is attributable to marital labor." Hall v. Hall, 962 So. 2d 404, 405 (Fla. 2d DCA 2007) (emphasis added). The question for the court when considering the appreciation of an ownership interest in a business is how much the marital labor actually contributed to the enhanced value of the business—not who "owns" what percentage of that enhanced value given the business's corporate structure. Certainly, as the Husband properly

asserts, ownership interest is not necessarily dispositive of appreciation due to marital effort.

In this case, however, it is clear that the trial court did not abuse its discretion in finding that the portion of the enhanced value attributable to the Husband's marital labor was coincidentally the same as his ownership interest. The evidence at the hearing showed that the Husband and his brother run Quality Boats in essentially a 50/50 fashion. There is no silent partner who is not contributing any actual effort despite having a significant ownership interest. If that were the case, further adjustments to account for "marital labor" might be needed. But here, where the effort of the Husband and his brother in running the business and enhancing its value appears to be approximately equal, the trial court's decision to base the calculation of appreciation due to marital effort on the Husband's 47.5% ownership share of the business was factually appropriate and therefore did not constitute an abuse of discretion.

D.    Discount for Lack of Marketability

Next, the Husband contends that the trial court abused its discretion by using the Wife's expert's discount for lack of marketability and control (19%) rather than the Husband's expert's discount for lack of marketability and control (30%). We disagree. Both experts testified that they applied a discount based on their experience and assessment of the nature of the marketability and control of the business. Given this testimony, the trial court had the discretion to choose either expert's determination of the appropriate discount. See Erp v. Erp, 976 So. 2d 1234, 1237-39 (Fla. 2d DCA 2008) (noting that Florida courts have generally accorded discretion to the trial court as

to whether a marketability discount should be applied to a closely held corporation and in what amount).  Here, the trial court chose to use the Wife's expert's discount, and its decision to do so on these facts did not constitute an abuse of discretion.

### E.    Exclusion of Personal Goodwill

Finally, the Husband contends that the trial court abused its discretion by not including some amount for the personal goodwill of the Husband in its valuation of the business.  Again, there was conflicting evidence from the two experts on this issue, and the trial court was entitled to believe, or disbelieve, either witness.  While the Husband argues that the Wife's expert did not have a sufficient basis for his opinion on this matter, this dispute ultimately was a credibility issue for the trial court to address.  See Thompson v. Thompson, 576 So. 2d 267, 270 (Fla. 1991) ("The determination of the existence and value of goodwill is a question of fact and should be made on a case-by-case basis with the assistance of expert testimony.").  On the record here, we cannot say that the trial court abused its discretion in adopting the position advocated by the Wife's expert.

### F.    Holding

In sum, we conclude that the trial court's valuation of the marital appreciation of the Husband's nonmarital interest in Quality Boats was improperly determined due to two errors of law: the improper exclusion of the real property owned by Quality Boats from the valuation of the company, and the improper double-counting of its retained earnings.  Because of these two errors, we must reverse the equitable distribution award and remand for the trial court to redetermine the appreciation of Quality Boats in accordance with Florida law and then equitably distribute that

- 13 -

appreciation.  In doing so, the trial court may continue to use the 47.5% allocation of appreciation, the 19% discount for lack of marketability and control, and the zero value for personal goodwill.

## II.    Distribution of Dissipated Marital Assets

Next, the Husband contends that the trial court erred by charging him in the equitable distribution scheme with marital assets that had been dissipated during the course of the dissolution proceedings.  This argument also has merit and requires reversal.

This court has held that it is error to include assets in an equitable distribution scheme that have been diminished or dissipated during the dissolution proceedings unless there has been misconduct during the proceedings that results in the dissipation.  See Roth v. Roth, 973 So. 2d 580, 584-85 (Fla. 2d DCA 2008).  We have also defined what "misconduct" qualifies:

> The misconduct necessary to support inclusion of dissipated assets in an equitable distribution scheme does not include mismanagement or simple squandering of marital assets in a manner of which the other spouse disapproves.  Segall v. Segall, 708 So. 2d 983, 986 (Fla. 4th DCA 1998).  Instead, to include a dissipated asset in the equitable distribution scheme, there must be evidence of the spending spouse's intentional dissipation or destruction of the asset, and the trial court must make a specific finding that the dissipation resulted from intentional misconduct.  Levy [v. Levy], 900 So. 2d [737] at 746 [(Fla. 2d DCA 2005)] (reversing award of dissipated asset because the wife's testimony that she used the asset for attorney's fees and living expenses during the dissolution proceedings was unrebutted and the trial court did not find the wife guilty of misconduct); Cooper [v. Cooper], 639 So. 2d [153] at 155 [(Fla. 2d DCA 1994)] (reversing award of dissipated asset when the husband's testimony that he used the IRA funds to pay temporary support obligations and his own living expenses was unrebutted and there was no finding of misconduct); Bush [v.

- 14 -

> Bush], 824 So. 2d [293] at 294 [(Fla. 4th DCA 2002)] (reversing award of dissipated asset when the evidence showed that the husband exercised his stock options to pay the parties' financial obligations during the dissolution proceedings); Knecht [v. Knecht], 629 So. 2d [883] at 886 [(Fla. 3d DCA 1993)] (reversing award of dissipated asset when no evidence contradicted the wife's testimony that she expended the funds in her IRA for support during the dissolution proceedings).

Id. at 585 (emphasis added). If there is uncontradicted evidence in the record that the dissipated funds were used to pay marital expenses during the dissolution proceedings and if there is no evidence of misconduct, then it is an abuse of discretion to include the dissipated funds in the equitable distribution scheme. Id. at 586; see also Levy v. Levy, 900 So. 2d 737, 746 (Fla. 2d DCA 2005); Cooper v. Cooper, 639 So. 2d 153, 154-55 (Fla. 2d DCA 1994).

Significantly here, the trial court specifically found that neither the Husband nor the Wife had acted improperly with respect to either assets or liabilities and that "neither party was guilty of intentional dissipation, waste, depletion, or destruction of marital assets." Nevertheless, the trial court distributed marital assets to the Husband that had been used by him during the course of the dissolution proceedings to pay his living expenses, his temporary support obligations to the Wife, and his and the Wife's attorney's fees. Additionally, the trial court charged the Husband with the entire balance of the parties' line of credit on the marital home even though the only evidence was that the Husband had used the funds from this line of credit to pay family living expenses. Because this marital liability was incurred to pay the parties' living expenses during the dissolution proceedings, it was error to charge the Husband with the entire amount of this liability.

- 15 -

In addition, the court required the Husband to repay the Wife for "her half" of the 2013 income tax refund received during the course of the litigation. However, the undisputed evidence showed that the funds from this refund were used to pay the Wife's attorney's fees in this litigation. Hence, this asset, which was depleted during the dissolution proceedings to pay the parties' expenses, should not have been resurrected in the final judgment and distributed again. Given the explicit findings of no intentional dissipation, this "distribution" was error.

Accordingly, because of the improper inclusion of dissipated assets and the unequitable distribution of marital liabilities, we must reverse the equitable distribution scheme. On remand, the trial court must redistribute the parties' assets and liabilities without including the depleted assets and increased liabilities that resulted from the payment of the parties' expenses during the course of the litigation.

**Alimony**

Finally, the Husband contends that the trial court erred by determining that his K-1 income, which reflected his share of the business income whether distributed to him or not, was his income for purposes of calculating his support obligations to the Wife. While the trial court properly recognized that this issue was controlled by the supreme court's decision in Zold, the trial court misapplied Zold's holding to the evidence in this case. Therefore, we must reverse the alimony award and remand for further proceedings.

In Zold, the supreme court explained the general operation and limitations of an S corporation relating to distributions:

> The Subchapter S Revision Act of 1982 (the "Act")
> allows a small business corporation to elect to have all of the

corporation's income, deductions, losses, and credits pass through to the shareholders of the corporation for income tax purposes in accordance with each shareholder's pro rata share of ownership in the corporation.  See 26 U.S.C.A. § 1366 (West Supp. 2005).  This "pass-through" income is then taxed to the shareholders directly on the shareholders' individual federal income tax returns.  See 26 U.S.C.A. § 1363 (West Supp. 2005).  Corporations are generally treated as separate legal entities from their shareholders for tax purposes.  See S. Rep. No. 97-640, at 5, reprinted in 1982 U.S.C.C.A.N. 3253, 3257.  Without an election to be treated as an S corporation, income earned by the corporation is taxed to the corporation and distributions from the corporation are taxed separately to the shareholders.  See id.  The Subchapter S Revision Act of 1982 was enacted to prevent double income taxation at the corporate and shareholder levels for small business corporations.  See id.

Although an S corporation's net income is taxed directly to the shareholders under the Act, the shareholders do not necessarily receive distributions in an amount equivalent to what is taxed pursuant to the Subchapter S election.  In Florida, an S corporation's authority to make distributions to shareholders is limited by the corporation's articles of incorporation and section 607.06401, Florida Statutes (2004).  Section 607.06401 prohibits a corporation from making distributions in certain circumstances and provides in pertinent part that

> (3) No distribution may be made if, after giving it effect:
>
> (a) The corporation would not be able to pay its debts as they become due in the usual course of business; or
>
> (b) The corporation's total assets would be less than the sum of its total liabilities plus (unless the articles of incorporation permit otherwise) the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.

§ 607.06401(3), Fla. Stat. (2004). Thus, section 607.06401(3) prohibits distributions that would render the corporation unable to fulfill its corporate duties to its debtors [sic] and shareholders. In those circumstances, a corporation must retain its income and cannot make a distribution to shareholders without violating Florida law.

Zold, 911 So. 2d at 1227-28 (emphasis added) (footnote omitted). After reviewing the various sections of chapter 61 dealing with alimony, child support, and attorney's fees, the supreme court held that "undistributed 'pass-through' income that has been retained by a corporation for corporate purposes does not constitute income within the meaning of chapter 61" because "the undistributed 'pass-through' income will be used by the corporation to maintain corporate operations and therefore cannot be used by a shareholder-spouse to satisfy financial obligations imposed upon dissolution of marriage." Id. at 1231 (emphasis added). However, if undistributed pass-through income "has been retained for noncorporate purposes, such as to shield this income from the reach of the other spouse during dissolution, the improper motive for its retention makes it available 'income.' " Id. at 1231-32 (emphasis added).

Here, there was simply no evidence that the undistributed pass-through income reflected on the Husband's K-1 was being retained by Quality Boats for any noncorporate purpose. Hence, there was no legal basis upon which the trial court could treat that pass-through income as available for purposes of calculating the Husband's support obligations. Nevertheless, the trial court did so, basing its alimony and child support calculations on an income to the Husband of over $1 million annually when he

- 18 -

never actually received more than $250,000 to $300,000 in annual distributions during the entire course of the marriage.[3]  This error requires reversal of the alimony award.

In this appeal, the Wife argues that the trial court had the discretion to find that the entire amount of pass-through income was available to the Husband because he and his brother run the company.  However, that is not the legal standard set forth in Zold.  Instead, Zold requires the trial court to consider several factors when determining whether pass-through income is "available" for support:

> In determining whether the shareholder-spouse has met his or her burden of proving that the undistributed "pass-through" income was retained for corporate purposes, the trial court should consider (1) the extent to which a shareholder-spouse has access to or control over "pass-through" income retained by the corporation, (2) the limitations set forth in section 607.06401(3) governing corporate distributions to shareholders, and (3) the purpose(s) for which the "pass-through" income has been retained by the corporation.  Although a shareholder-spouse's ownership interest should be considered, it is not dispositive even where the spouse is a sole or majority shareholder in the corporation and has the ability to control the retention and distribution of the corporation's income. Ownership of capital stock does not entitle shareholders to income that has been retained by an S corporation because shareholders do not have a right to an interest in the corporation's income.

Zold, 911 So. 2d at 1233 (emphasis added).

In this case, the final judgment does not directly address these factors, but instead relies on the Wife's expert's opinion that Quality Boats was holding "excess"

---

[3]There was evidence that Quality Boats made additional distributions to each of the shareholders in amounts sufficient to cover the income taxes payable on the amount of the pass-through income attributable to them.  These distributions, while nominally made to the Husband, are not available to him as income as they are committed to the IRS.

retained earnings. This opinion was based solely on the expert's assertion that the percentage of retained earnings held by Quality Boats was higher than that of other boat dealers and the expert's rejection of Quality Boats' business model of paying cash for inventory rather than financing it. But even if the expert's opinion concerning the extent of the retained earnings could be dispositive, that opinion does not demonstrate that earnings are being retained for a noncorporate purpose—only that they are being retained for a corporate purpose with which the expert does not agree. This disagreement does not constitute evidence sufficient to permit the trial court to attribute undistributed pass-through income to the Husband for purposes of calculating alimony and child support.

In the final judgment, the trial court also opined that permitting Quality Boats to retain its earnings to continue to purchase inventory on a cash basis and to fund the expansion of a new Sarasota location was impermissible because those decisions required the Wife to, in essence, fund the corporate objectives. But this finding improperly considers the company's income to be the Husband's income, ignoring the fact that the company is a separate legal entity from the Husband and that its income is not his income. It also ignores the fact that the purchase of inventory and the expansion of the business are corporate purposes. While the trial court may not agree with the company's business decisions, these decisions further the corporate interests and are not simply an effort "to shield this income from the reach of the other spouse." Id. at 1231. To the extent that the trial court's ruling relies on its disagreement with the decisions of Quality Boats' board of directors, it is an improper application of Zold.

- 20 -

For all of these reasons, we must reverse on this issue and remand for recalculation of the Husband's alimony obligation in accord with the income he receives through actual wages and actual distributions and without consideration of the undistributed pass-through income. And because the trial court's calculation of the Husband's income also affected the determination of child support, we must reverse that award as well and remand for reconsideration.

## Conclusion

In sum, we reverse the equitable distribution scheme and remand for the trial court to properly determine the increased value of the Husband's nonmarital interest in Quality Boats that resulted from his marital labor. The trial court must also amend the equitable distribution scheme to eliminate marital assets that were depleted for marital purposes and to equitably distribute marital liabilities that were incurred for marital purposes during the course of the litigation. We also reverse the award of alimony and remand for the trial court to recalculate it using only the income actually received by the Husband. And because the Husband's income must be redetermined, the trial court will need to revisit the award of child support.

Reversed and remanded for further proceedings as directed.

CASANUEVA and ROTHSTEIN-YOUAKIM, JJ., Concur.

- 21 -