# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-0839
Lower Tribunal No. 2021-DR-001089-FM01-XX

_____

J.E.J.,

Appellant,

v.

S.A.B.,

Appellee.

_____

Appeal from the Circuit Court for Collier County.
Christine H. Greider, Judge.

July 11, 2025

GANNAM, J.

Jerome Johnson, the appellant father, appeals from a final paternity judgment awarding child support to Stacy Bee, the appellee mother, and requiring Johnson's purchase of a life insurance policy to secure the child support award.[1] Because the trial court erred in including all of Johnson's pass-through income from his company in calculating the child support award, we reverse the child support award and

---

[1] This case was transferred from the Second District Court of Appeal to this Court on January 1, 2023.

remand for recalculation. We also certify conflict with *Bair v. Bair*, 214 So. 3d 750 (Fla. 2d DCA 2017), and *McHugh v. McHugh*, 702 So. 2d 639 (Fla. 4th DCA 1997).

## I. The Case

Johnson and Bee lived together for eight years and begat two sons. As their relationship ended, they filed competing paternity petitions to establish child support and parenting time. They did not dispute Johnson's paternity of the boys, but did dispute the amount of Johnson's income for purposes of calculating his child support obligation.

Pertinent to this appeal, the trial record shows Johnson is majority owner, CEO, and board chairman of a Minnesota-based limited liability company (LLC) called Energy Management Collaborative (EMC). EMC is a pass-through entity for federal income tax purposes, meaning the company's income is not taxed as company income, but passes through to its members in proportion to their ownership interests to be taxed as their income. Johnson filed two financial affidavits disclosing his income—one shortly after filing his paternity petition and another shortly before trial. In the first affidavit, Johnson included in his monthly income the total amount of EMC pass-through income attributed to him for federal income tax purposes but noted that he did not actually receive all the income. In his amended financial affidavit, Johnson stated a lower monthly amount of EMC income actually paid to him by distribution.

Johnson testified at trial that EMC income is distributed to members (whom he calls shareholders) according to a formula established by the board of directors. Under the formula, the first 50% of EMC income is used to pay shareholders' income taxes, the next 25% is retained for reinvestment in the company, and up to the remaining 25% of income is distributed to members as determined by the board of directors based on company cash flow needs. Johnson testified that the EMC income actually distributed to him is correctly stated in the amended affidavit. Bee did not introduce any evidence to refute Johnson's testimony on either the accuracy of the respective financial affidavits or EMC's formula and purposes for retaining and distributing its income.

Following three days of trial, the trial court entered a final paternity judgment awarding child support to Bee, counting no income for Bee and counting all EMC pass-through income attributable to Johnson instead of only the EMC income he testified he actually received. The judgment also mistakenly included an agreement by Johnson to keep in place a trust and life insurance policy securing his child support obligations. Johnson moved for rehearing on both the calculation of his income and on the security requirement. The trial court summarily denied rehearing on the income calculation but granted rehearing on the security requirement. At the rehearing, the trial court stated it would enter a new judgment resolving the security issue with language allowing Johnson to purchase life insurance or provide another

statutorily permissible form of security. The amended final judgment, however, ordered Johnson to obtain life insurance to secure his child support obligation without offering Johnson any statutory alternatives.

## II. Issues on Appeal and Standards of Review

Johnson challenges the trial court's child support award as erroneously based on his total EMC pass-through income instead of the amount actually distributed to him, and he challenges the life insurance security requirement as inconsistent with the court's oral pronouncement. We review a trial court's child support award for an abuse of discretion, and we will find an abuse of discretion where there is not competent, substantial evidence to support the award. *See Parker v. Parker*, 141 So. 3d 1291 (Fla. 1st DCA 2014). We review the trial court's legal determinations de novo. *See Delosreyes v. Delosreyes*, 392 So. 3d 128, 130 (Fla. 4th DCA 2024).

Where there is no authoritative interpretation of a text by the Florida Supreme Court or our own district, we undertake our interpretive work according to first principles. *See CED Cap. Holdings 2000 EB, LLC v. CTCW-Berkshire Club, LLC*, 363 So. 3d 192, 195 (Fla. 6th DCA 2023). We "follow the supremacy-of-text principle—namely, the principle that the words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020) (cleaned up) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of*

*Legal Texts* 56 (2012)). Thus, we interpret Florida's constitution and statutes according to the plain meaning of their text, looking to "all the textual and structural clues that bear on the meaning of a disputed text" and using the traditional interpretive canons for guidance where helpful. *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) (cleaned up).

### III. Analysis

### A. Calculating income for child support purposes.

The presumptive amount of child support payable in a paternity action is determined by section 61.30, Florida Statutes. §§ 61.30(1)(a), 742.031(1), Fla. Stat. (2022). The amount payable is based on the combined net incomes of the parents, with each parent's share determined by the parent's percentage of the total net income. § 61.30(5)–(10), Fla. Stat. (2022). A parent's net income is determined by subtracting allowed deductions from the parent's gross income. § 61.30(4), Fla. Stat. (2022).

For purposes of chapter 61, "'[i]ncome' means any form of *payment to* an individual, regardless of source, including, but not limited to . . . dividends . . . and any other *payments* . . . ." § 61.046(8), Fla. Stat. (2022) (emphasis added). A parent's gross income for child support purposes under section 61.30 includes "business income," meaning "gross receipts minus ordinary and necessary expenses required to produce income," paid to the parent "from sources such as self-employment,

partnership, close corporations, and independent contracts." § 61.30(2)(a)3., Fla. Stat. (2022). "[I]ncome tax liabilities" and "[f]ederal insurance contributions or self-employment tax" are allowed deductions from gross income to determine net income for the child support calculation. § 61.30(3)(a), (b), Fla. Stat. (2022).

### B. Pass-through income.

Before determining the amount of EMC income that must be included in Johnson's gross income for child support purposes, a brief survey of the federal income tax laws applicable to pass-through entities like EMC is helpful. Under the federal Internal Revenue Code and Treasury Regulations, business entities with more than one owner are taxed either as corporations or as partnerships. *See* 26 C.F.R. §§ 301.7701-2(a), 301.7701-3(a). Corporations are taxed on corporate income, 26 U.S.C. § 11(a), and a corporation's shareholders (owners) are taxed on the distributions of money or property they receive from the corporation, *see generally* 26 U.S.C. § 301. Partnerships, however, are not taxed on partnership income. 26 U.S.C. § 701. Rather, partnership income *passes through* to the partners (owners) in proportion to their partnership interests, and the partners are taxed on this pass-through income whether or not they actually receive the income from the partnership. *See* 26 U.S.C. §§ 702–704. But a corporation can be taxed like a partnership, with its income passing through to its shareholders for income tax purposes, if the corporation elects classification as an S corporation under the

Internal Revenue Code. *See* 26 U.S.C. §§ 1363(a), 1366; F. Hodge O'Neal et al., *O'Neal & Thompson's Close Corporations & LLCs* § 2:6 (Rev. 3d ed. 2004) ("A closely held enterprise with a simple capital structure can obtain the limited liability for shareholders that comes with corporate status and the conduit or 'pass through' tax effect of a partnership by incorporating and electing to be taxed under Subchapter S of the Internal Revenue Code.").

In contrast to a corporation, an LLC is taxed as a partnership by default, but it may elect to be taxed as a corporation. 26 C.F.R. § 301.7701-3(a), (b). With both pass-through LLCs and S corporations, despite individual owners' tax liability for the pass-through income, the income remains the property of the corporation or LLC until distribution to owners is authorized by the entity or by law. *See generally* J. William Callison & Maureen A. Sullivan, *Limited Liability Companies* § 7:2 (2024) ("The LLC statutes do not mandate distributions to members prior to their withdrawal from the LLC or the LLC's dissolution. When members desire that the LLC make distributions on a regular basis, the operating agreement should mandate interim profit distributions."); 11 *Fletcher Cyclopedia of the Law of Corporations* § 5321 ("In other words, profits belong to the corporation and not its shareholders until the declaration of a dividend.").

C. Counting pass-through income for child support purposes.

Given that pass-through LLC income is attributed to an LLC member for income tax purposes whether or not paid to the member, 26 U.S.C. §§ 702–704; 26 C.F.R. § 301.7701-3(a), the amount of EMC income attributable to Johnson for income tax purposes will include both income paid to Johnson and income retained by EMC. Thus, given that section 61.30 "business income" for child support purposes is income *paid to* a parent, §§ 61.046(8), 61.30(2)(a)3., Fla. Stat. (2022), we must decide how much, if any, of Johnson's pass-through EMC income not paid to Johnson—i.e., retained by EMC—is includable as gross income in calculating Johnson's child support obligation. We agree with the parties and the trial court that the Florida Supreme Court's decision in *Zold v. Zold*, 911 So. 2d 1222 (Fla. 2005), controls our decision.

In *Zold*, the supreme court reviewed a final judgment of dissolution where the father and former husband was the CEO and majority shareholder of an S corporation. 911 So. 2d at 1225. The issue before the court was "whether and under what circumstances undistributed 'pass-through' income that has been retained by a corporation for corporate purposes constitutes income within the meaning of chapter 61." *Id.* at 1227. The court analyzed the chapter 61 definitions of income, considering first the language of section 61.046, applicable to both alimony and child support, which defined income as "'any form of *payment* to an individual, regardless

8

of source, including but not limited to: wages, salary, commissions and bonuses, compensation as an independent contractor, worker's compensation, disability benefits, annuity and retirement benefits, pensions, dividends, interest, royalties, trusts, and any other *payments . . . .*'" *Id.* at 1228 (quoting § 61.046(7), Fla. Stat. (2004)[2]). The court also considered the section 61.30 definition of "business income" for child support purposes, meaning "'*gross receipts minus ordinary and necessary expenses required to produce income,*'" "'from sources such as self-employment, partnership, *close corporations,* and independent contracts.'" *Id.* at 1229 (quoting § 61.30(2)(a)3., Fla. Stat. (2004)).[3]

Based on these chapter 61 definitions of "income" and "business income," the court observed, "Although sections 61.046(7)[4] and 61.30(2)(a)(3) utilize different language to define income, both statutory provisions focus on income that is *available* to a spouse." 911 So. 2d at 1229. And based on this observation, the court concluded that "undistributed 'pass-through' income that has been retained by a corporation for corporate purposes does not constitute income within the meaning of chapter 61. Specifically, undistributed 'pass-through' income that has been retained for corporate purposes is not available 'income' under section

---

[2] This definition was later renumbered § 61.046(8). *See* Pt. III.A, *supra.*
[3] *See* Pt. III.A, *supra.*
[4] *See* note 2, *supra.*

61.046(7)[5] or 'business income' under section 61.30(2)(a)(3)." *Id.* at 1231. "This is because the undistributed 'pass-through' income will be used by the corporation to maintain corporate operations and therefore cannot be used by a shareholder-spouse to satisfy financial obligations imposed upon dissolution of marriage." *Id.* But "where undistributed 'pass-through' income has been retained for noncorporate purposes, such as to shield this income from the reach of the other spouse during dissolution, the improper motive for its retention makes it available 'income' under section 61.046(7)[6] or 'business income' under section 61.30(2)(a)(3)." *Id.* at 1231–32.

The *Zold* court then explained how to apply its "corporate purpose" test: "when the issue of whether undistributed 'pass-through' income was retained for corporate purposes is contested, the shareholder-spouse should have the burden of proving that the undistributed 'pass-through' income was properly retained for corporate purposes rather than impermissibly retained to avoid alimony, child support, or attorney's fees obligations . . . ." *Id.* at 1233. The court explained the burden of proof further:

> In determining whether the shareholder-spouse has met his or her burden of proving that the undistributed "pass-through" income was retained for corporate purposes, the trial court should consider (1) the extent to which a shareholder-spouse has access to or control over "pass-

---

[5] *Id.*

[6] *Id.*

through" income retained by the corporation, (2) the limitations set forth in section 607.06401(3) governing corporate distributions to shareholders, and (3) the purpose(s) for which the "pass-through" income has been retained by the corporation.

*Id.* The court clarified that the first consideration is not dispositive because, even where a spouse can control distributions, the spouse should not be expected to harm the corporation by distributing its income against the wishes of other shareholders or when economically imprudent. *Id.* "Thus, more important than the shareholder-spouse's ownership interest is the purpose for which the undistributed 'pass-through' income has been retained by the corporation." *Id.*

D. Counting Johnson's pass-through income for child support purposes.

The *Zold* corporate purpose test applies to Johnson's undistributed EMC pass-through income because, like the S corporation in *Zold*, EMC is a pass-through entity for federal income tax purposes. (*See* Pt. III.B, *supra.*) So, "the same analysis applies." *Zold*, 911 So. 2d at 1230 n.12. Applying the corporate purpose test to the trial evidence below shows that the trial court erred in counting Johnson's undistributed EMC pass-through income as Johnson's business income for purposes of calculating child support under section 61.30.

The first *Zold* consideration favors Johnson. Although Johnson is the majority shareholder, CEO, and board chairman of EMC, he is but one of six shareholders, and he testified that he has influence, but not control over board decisions to retain

11

or distribute EMC income in accordance with its distribution policy. The trial court did not expressly state or implicitly suggest that it found Johnson's testimony to be inaccurate or incredible, and Bee put on no evidence to the contrary. Thus, there is no competent substantial evidence in the record to support the trial court's finding that, "[a]s the majority shareholder, CEO and Chairman of EMC, LLC, he has significant control over distributions and what income is retained."

The second *Zold* consideration favors Bee, but only to the extent that Johnson has not claimed EMC is legally prohibited from distributing more of its income to shareholders. The *Zold* court looked specifically to section 607.06401(3), Florida Statutes, which prohibits distributions that would make a corporation insolvent, but EMC is not a Florida corporation subject to the statute. Assuming, however, a cognate provision of the state LLC act governing EMC prohibits distributions that would make EMC insolvent, no such statute was before the trial court.[7]

The third *Zold* consideration—the corporate purpose for retaining income— is the most important here, as it was in *Zold*. *See* 911 So. 2d at 1233. Johnson's unrefuted testimony was that, after the first 50% of EMC income is used to cover the shareholders' taxes, the next 25% of EMC income is retained for the corporate purposes of paying employees and investing in EMC programs and other companies.

---

[7] Though EMC is based in Minnesota, the trial record does not establish its state of organization.

12

Additionally, some or all of the remaining 25% of EMC income may be retained instead of distributed to satisfy EMC's operational cash flow needs. These are quintessential corporate purposes for retaining income. *See, e.g.*, *Zold*, 911 So. 2d at 1231 (maintaining corporate operations); *Adams v. Adams*, 340 So. 3d 551, 557 (Fla. 2d DCA 2022) (investing in additional properties); *Bair v. Bair*, 214 So. 3d 750, 762 (Fla. 2d DCA 2017) ("purchase of inventory and the expansion of the business"); *Brown v. Brown*, 180 So. 3d 1070, 1073 (Fla. 1st DCA 2015) (payment of salaries); *McHugh v. McHugh*, 702 So. 2d 639, 641 (Fla. 4th DCA 1997) ("building the business and keeping it going"). Again, the trial court did not express or imply any inaccuracy or incredibility of Johnson's testimony, and Bee put on no evidence to show any purpose for EMC's income retention other than Johnson's stated corporate purposes under EMC's established 50%–25%–25% distribution policy. Thus, no competent substantial evidence supports the trial court's finding that Johnson "did not testify about or otherwise explain any reason why the Company retained earnings."

All things considered, Johnson carried his burden of proving that the income retained by EMC satisfies the *Zold* corporate purpose test. Therefore, EMC's retained income should be excluded from Johnson's gross income under section 61.30.

E. Counting tax distributions as income for child support purposes.

Although Johnson met his corporate purpose burden as to EMC's retained income, we cannot fully endorse Johnson's accounting for the EMC income he received in distributions. Johnson testified that the first 50% of EMC's income is distributed to shareholders for the payment of their income taxes, but he did not count this "tax distribution" as income received from EMC.[8] According to his testimony, he only received as income the EMC distributions from the last 25% of EMC income—the amount he called "shareholder distributions" on his financial affidavit. Johnson's theory at trial was that all EMC income not paid out as shareholder distributions is income retained by EMC for corporate purposes—i.e., paying members' taxes, paying employees, reinvesting in the company, and preserving cash flow for operations. On this theory, his unrefuted testimony was sufficient to establish a corporate purpose for EMC's "retention" of all its income except for the shareholder distributions, and to quantify the shareholder distributions he received.

But Johnson's exclusion of the EMC tax distribution from his income in the same manner he excluded EMC's retained income was incorrect under a plain reading of sections 61.046(8) and 61.30(2)(a)3. because the tax distribution was a

---

[8] Johnson did not say whether the tax distribution was paid to shareholders once per year or in multiple payments during the year.

business income "payment to" Johnson. As shown above, pass-through LLCs do not have income tax liability because the tax liability is passed through to its members. (*See* Pt. III.B, *supra*.) Thus, the income used by EMC for payment of the shareholders' taxes must be *distributed*—i.e., *paid*—to the shareholders for that purpose, not *retained* for that purpose. So, even if Johnson paid his taxes using all of the tax distribution he received from EMC, he still received that income from EMC before he paid taxes with it. To be sure, the amount of Johnson's income tax liability is properly deducted from Johnson's gross income in determining his net income for child support purposes under section 61.30. *See* § 61.30(3)(a), Fla. Stat. (2022). But there is no support in the text of section 61.30 for disregarding the EMC tax distribution as gross income and Johnson's income tax liability as an allowed deduction in the statutory net income calculation. Nor does *Zold* apply to the tax distribution because the corporate purpose test only applies to retained income, not income distributed for a specific purpose.

At the time of trial, case precedent binding on the trial court supported Johnson's exclusion of the tax distribution from his income. In *Bair v. Bair,* the Second District considered "evidence that [the Husband's company] made additional distributions to . . . shareholders in amounts sufficient to cover the income taxes payable on the amount of the pass-through income attributable to them," and concluded, "These distributions, while nominally made to the Husband, are not

15

available to him as income as they are committed to the IRS." 214 So. 3d 750, 761 n.3 (Fla. 2d DCA 2017). Similarly, in *McHugh v. McHugh*, the Fourth District affirmed excluding from a husband's income his company's retained earnings that were "not available to him" and, "[f]or the same reason, [rejected] the wife's contention that [the company's] payment of the husband's tax liability on the [pass-through] income should have been included in the husband's income for child support purposes." 702 So. 2d 639, 641–42 (Fla. 4th DCA 1997).[9] But we are not bound by our sister districts' opinions. *See CED Cap. Holdings 2000 EB, LLC*, 363 So. 3d at 195; *Pardo v. State*, 596 So. 2d 665, 667 (Fla. 1992). And under a plain reading of sections 61.046 and 61.30, Johnson should have counted the EMC tax distribution as part of his gross (business) income and then deducted the amount of his tax liability in determining his net income for child support purposes. We certify conflict with *Bair* and *McHugh* on this point.

---

[9] The trial and amended judgment preceded the creation of the Sixth District Court of Appeal on January 1, 2023. Ch. 2022-163, § 8, Laws of Fla. Thus, the trial court was in the Second District when it entered the amended judgment. To the extent that the quoted material from *Bair*, which appeared in a footnote, was not sufficiently part of the *Bair* holding to bind the trial court as district precedent, the trial court would still have been bound by *McHugh*. *See Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992) ("[I]n the absence of interdistrict conflict, district court decisions bind all Florida trial courts.").

## F. Security for child support.

Because we reverse the child support award for recalculation, we also reverse the requirement for Johnson to purchase life insurance to secure the amount of the child support award. But we do not decide whether the trial court erred in ordering Johnson to obtain life insurance as security instead of giving Johnson statutory security alternatives as it orally decreed at the rehearing. On remand, the trial court may determine anew whether to order Johnson to secure the recalculated child support award in accordance with section 60.13(c), giving the parties the opportunity to put on evidence and argue for or against such security.

## IV. Conclusion

We reverse the guidelines child support award and life insurance security requirement in the amended final judgment and remand for further proceedings. On remand, the trial court must recalculate Johnson's net income in accordance with section 61.30 and this opinion. Specifically, all EMC distributions to Johnson—i.e., the tax distributions from the first 50% of EMC income and the shareholder distributions from the last 25%—are includable in Johnson's gross income. None of EMC's retained income—i.e., the second 25% of EMC's income plus so much of the last 25% that is not distributed to shareholders—is includable in Johnson's gross income. All of Johnson's income tax liability on the share of EMC pass-through income attributable to him—i.e., on his tax distributions, his shareholder

distributions, and his share of EMC retained income—is deductible from his gross income to determine his net income. To the extent the trial record does not provide enough information to determine these amounts, the trial court must take additional evidence as necessary to make the relevant determinations.[10] Finally, we certify conflict with *Bair v. Bair*, 214 So. 3d 750 (Fla. 2d DCA 2017), and *McHugh v. McHugh*, 702 So. 2d 639 (Fla. 4th DCA 1997).

REVERSED in part and REMANDED with instructions. CONFLICT CERTIFIED.

WHITE and MIZE, JJ., concur.


Christopher D. Donovan, of Donovan Appellate Law, PLLC, Estero, for Appellant.

Cynthia B. Hall, of Silverio & Hall, P.A., Naples, for Appellee.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED

---

[10] This opinion should not be read to exclude from the net income calculation any other income and deductions properly attributable to Johnson (e.g., salary, bonuses, director fees, investment income, and taxes thereon).